## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GOVINDA, LLC, d/b/a<br>HAMPTON INN MIDWEST CITY,<br><br>        Plaintiff,<br><br>v.<br><br>COLUMBIA MUTUAL INSURANCE<br>COMPANY<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. CIV-20-542-R<br>)<br>)<br>)<br>)<br>)<br>) |

## **AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Govinda, LLC d/b/a/ Hampton Inn Midwest City ("Govinda" or "Plaintiff"), through its undersigned counsel, requests Declaratory Judgment pursuant to 12 O.S. § 1651[1], regarding coverage for Business Income and Extra Expense and Civil Authority, under an "all-risk" Property Policy issued by Defendant Columbia Mutual Insurance Company ("Columbia" or "Defendant"), Policy No. CMPOK0000030002 ("Columbia Policy").

    1.    Plaintiff is a domestic limited liability company, owning and operating a hotel property in the state of Oklahoma. Plaintiff specifically owns Hampton Inn in Midwest City, Oklahoma.

---

[1] Plaintiff filed this action in the District Court of Oklahoma County, Oklahoma. Defendant subsequently removed the case to this Court. Thus, this Court applies 28 U.S.C. § 2201 to a request for declaratory judgment. *See Munich Welding, Inc. v. Great Am. Ins. Co.*, 415 F. Supp. 2d 571 (W.D. Pa. 2006) (A federal court sitting in diversity must apply federal rules to a request for a declaratory judgment.) (citing *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986)). Plaintiff is not admitting jurisdiction should be exercised by this Court nor is it waiving its right to file a motion to remand.

2. Upon information and belief, Defendant is a foreign insurer doing business in the state of Oklahoma.

3. The matter in controversy exceeds, exclusive of interest, the sum of seventy-five thousand dollars ($75,000.00).

4. Plaintiff, as the named insured, owns revenue generating property in the state of Oklahoma.

5. Policy No. CMPOK0000030002, underwritten by Defendant Columbia provides "all-risk" benefits for a policy period from November 8, 2019 to November 8, 2020. *Ex. 1, Columbia Policy*. Some of the provisions of the policy, among others[2], provide benefits including business income (and extra expense) and interruption by civil authority to Plaintiff's property in Midwest City. Plaintiff has paid all premiums for the coverage. The Policy Declarations reflect the policy limit of said coverages is one million six hundred twelve thousand five hundred dollars ($1,612,500.00).

6. Specifically, the Business Income (and Extra Expense) Coverage Form in the Columbia Policy provides as follow:

> **A. Coverage**
> **1. Business Income**
> Business Income means the:
> a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and
> b. Continuing normal operating expenses incurred, including payroll.
>
> * * *

---

[2] Plaintiff reserves the right to assert additional coverages provide benefits and rely upon policy language not contained in this initial pleading.

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Ex. 1, Columbia Policy.*

7. "Covered Causes of Loss" means "direct physical loss" unless subject to limitations or exclusions. "Direct physical loss" is not defined in the Columbia Policy. Plaintiff further contends no valid limitations or exclusions exist as to preclude or limit coverage under the Columbia Policy. *Ex. 1, Columbia Policy.*

8. The Columbia Policy defines "Suspension" and "Operations" as follows:

> "Suspension" means:
> a. The slowdown or cessation of your business activities; or
> b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.
>
> * * *
>
> "Operations" means:
> a. Your business activities occurring at the described premises; and
> b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

*Ex. 1, Columbia Policy.*

9. Specifically, the Civil Authority Coverage in the Columbia Policy provides as follows:

> **5. Additional Coverages**
>
> **a. Civil Authority**
>
> In this Additional Coverage – Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.
>
> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> **(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> **(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.
>
> Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.
>
> Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:
>
> **(1)** Four consecutive weeks after the date of that action; or
>
> **(2)** When your Civil Authority Coverage for Business Income ends;
>
> whichever is later.

*Ex. 1, Columbia Policy.*

4

10. Specifically, the Columbia Policy provides Extended Business Coverage as follows:

> **c. Extended Business Income**
>
> **(1)     Business Income Other Than "Rental Value"**
>
> If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:
>
> **(a)**   Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and
>
> **(b)** Ends on the earlier of:
>
> **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or
>
> **(ii)** 60 consecutive days after the date determined in **(1)(a)** above.
>
> However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.
>
> Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

*Ex. 1, Columbia Policy.*

11. Specifically, the Columbia Policy provides Extra Expense coverage as follows:

> **2. Extra Expense**
>
> a. Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

5

>    b. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.
>
>    We will pay Extra Expense (other than the expense to repair or replace property) to:
>
>    (1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.
>
>    (2) Minimize the "suspension" of business if you cannot continue "operations".
>
>    We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

*Ex. 1, Columbia Policy.*

12. At some point, Defendant added an endorsement to the Policy that purports to exclude coverage for loss due to virus or bacteria. However, no consideration was provided to Plaintiff in exchange for the addition of this endorsement. Therefore, the endorsement is void or invalid. Furthermore, Defendant failed to obtain consent from Plaintiff to add the subject endorsement. Because said endorsement is void or invalid, Defendant cannot rely upon said endorsement as a basis to limit or deny coverage.

13. On or about March 15, 2020, Oklahoma Governor Kevin Stitt utilized his powers pursuant to Section 2 of Article VI of the Oklahoma State Constitution and 63 O.S. §§ 6101-6900 of the Oklahoma Statutes, specifically 63 O.S. § 6401, and issued Executive Order 2020-07. Executive Order 2020-07 declared an emergency caused by the impending threat of COVID-19 and/or the COVID-19 pandemic to the people of Oklahoma and the

public's peace, health and safety. Governor Stitt's Executive Order applies to all seventy-seven (77) counties in Oklahoma. *Ex. 2, Executive Order 2020-07.*

14.  Effective March 25, 2020 at 11:59 p.m., per paragraph No. 20 of Governor Stitt's Executive Order, all businesses not identified as being within a critical infrastructure sector were ordered to close to the public. *Ex. 3, Fourth Amended Executive Order 2020-07 (03/24/20) at ¶ 20.* Plaintiff is not identified as being within a critical infrastructure sector. Further, pursuant to paragraph No. 19 of the Executive Order, all social gatherings of more than ten people were prohibited. *Id. at ¶ 19.* The Executive Order by Governor Stitt was effective until April 30, 2020. *Ex. 4, Eighth Amended Executive Order 2020-07 (04/02/20) at ¶¶ 19-20.*

15.  The mayor of Midwest City issued orders or proclamations requiring the suspension of operations of businesses deemed non-essential. Plaintiff operates its hotel in Midwest City. *Ex. 5, Midwest City Ordinance 3406.*

16.  These closure orders and proclamations caused Plaintiff to sustain losses resulting from a suspension of operations as defined by the Columbia Policy at its property in response to dangerous physical conditions that constitute a Covered Cause of Loss.

17.  On April 10, 2020, President Trump made the following remarks on insurance companies making payments to businesses who had purchased business interruption coverage:

> Reporter: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number

two, would you suggest to credit card companies to reduce their fees during this time?

President Trump: Well it's something that we've already suggested, we're talking to them. **Business interruption insurance**, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. **But if I had it I'd expect to be paid**. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

*https://youtu.be/_cMeG5C9TjU (last visited on April 24, 2020) (emphasis added).*

  18. As a result of this COVID-19 pandemic disaster, Plaintiff sustained direct physical loss of or damage to its property and will continue to sustain direct physical loss of or damage to its property covered by the Columbia Policy, including but not limited to business interruption, extra expense, and interruption by civil authority. As a direct result of this pandemic disaster and closure orders, Plaintiff experienced a slowdown of its business activities and it has been damaged, as described above.

19. There is an actual, real and substantial controversy now existing between the parties in respect to the Columbia Policy, and by Order and Decree herein, all rights, duties and legal relations of the parties hereto should be immediately and judicially determined, adjudicated and declared.

20. Based on the above facts, Plaintiff is entitled to declaratory judgment that its losses are covered under the Columbia Policy issued by Defendant. Plaintiff seeks a declaration from this Court that Plaintiff sustained a "direct physical loss" and/or "a risk of direct physical loss" of its premises as a result of (a) Executive Order 2020-07 and subsequent amendments thereto and the order and proclamation referenced in ¶ 15, *supra*; and/or (b) the COVID-19 pandemic disaster.

21. Plaintiff seeks a declaratory judgment from this Court declaring the Columbia Policy covers Plaintiff's losses and expenses related to of the slowdown of its business activities as a result of the COVID-19 pandemic disaster and state and local executive orders. Plaintiff seeks a ruling Defendant is responsible for said losses and expenses in an amount to be determined.

22. Plaintiff gave proper and timely notice of this claim to Defendant, through its representatives, and otherwise complied with all conditions precedent for recovery under the subject insurance policy.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Govinda, LLC d/b/a Hampton Inn Midwest City prays for a judgment from this Court declaring the rights, duties and obligations between it and Defendant herein, and that based on the above facts, such judgment should be that the

policies issued to Plaintiff by Defendant affords coverages for Plaintiff's losses and expenses related to the COVID-19 pandemic disaster and/or government mandated closure orders, and Defendant is responsible for said losses and expenses and such further relief which may be appropriate.

    Respectfully submitted,

    */s/ J. Revell Parrish*

Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
J. Revell Parrish, OBA No. 30205
J. Renley Dennis, OBA No. 33160
WHITTEN BURRAGE
512 North Broadway Ave., Suite 300
Oklahoma City, OK 73102
Telephone:   (405) 516-7800
Facsimile:   (405) 516-7859
Emails:   rwhitten@whittenburragelaw.com
         mburrage@whittenburragelaw.com
         rparrish@whittenburragelaw.com
         jdennis@whittenburragelaw.com

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2020, I filed the attached document with the Clerk of Court. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

    */s/ J. Revell Parrish*
J. Revell Parrish