**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| GOVINDA, LLC d/b/a | ) | |
| HAMPTON INN MIDWEST CITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-20-542-R |
| | ) | |
| COLUMBIA MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT
COLUMBIA MUTUAL INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

Respectfully submitted,

MILLER JOHNSON JONES
ANTONISSE & WHITE, PLLC

By:     */s/ J. Logan Johnson*
        Brad Miller, OBA #11437
        J. Logan Johnson, OBA #12722
        Jami Rhoades Antonisse, OBA #20612
        Grace Dawkins, OBA #32764
        500 NW 6th Street, Suite 300
        Oklahoma City, OK 73102-1219
        Telephone: (405) 896-4388
        Fax: (405) 609-2995
        bmiller@mjjaw.com
        ljohnson@mjjaw.com
        jantonisse@mjjaw.com
        gdawkins@mjjaw.com
        *Attorneys for Defendant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………...iii

STATEMENT OF THE CASE........................................................................ 1

PROCEDURAL HISTORY……………………………………………….. 2

STATEMENT OF UNDISPUTED FACTS………………………………...3

ARGUMENT AND AUTHORITY………………….……………………… 11

    I.      Govinda did not experience direct physical loss of or damage to property……………………………………………………... 13

    II.     Govinda was not subject to any action of civil authority that prohibited access to its premises……………….…………………… 16

    III.    The "Virus or Bacteria" exclusion in the policy precludes coverage for Govinda's claim…………………………………………….... 21

    IV.    The "Loss of Market" exclusion in the policy precludes coverage for Govinda's claim……………………………………………………25

CONCLUSION……………...……………………………………………… 28

CERTIFICATE OF SERVICE……………………………………………30

## TABLE OF AUTHORITIES

## CASES

*1210 McGavock Street Hospitality Partners, LLC v. Admiral Indemnity Co.,*
2020 WL 7641184 (M.D. Tenn. Dec. 23, 2020)…………………………………………25

*Aetna Casualty & Surety Co. v. Yates*, 344 F.2d 939 (5th Cir. 1965)……………………..12-13

*Bituminous Casualty Corp. v. Cowen Construction, Inc.,*
55 P.3d 1030 (Okla. 2002)………………………………………………………………... 14

*Boxed Foods Co. v. California Capital Insurance Co.,*
-- F. Supp. 3d --, 2020 WL 6271021 (N.D. Cal. Oct. 26, 2020)…………………………24, 25

*Boyd Motors, Inc. v. Employers Insurance of Wausau,*
880 F.2d 270 (10th Cir. 1989)………………………………………………………………... 26

*Dickie Brennan & Co. v. Lexington Insurance Co.,*
636 F.3d 683 (5th Cir. 2011)……...……………………………………………...………...19

*Dictiomatic, Inc. v. U.S. Fidelity & Guaranty Co.,*
958 F. Supp. 594 (S.D. Fla. 1997)………………………………………………………... 26-27

*Diesel Barbershop, LLC v. State Farm Lloyds,*
-- F. Supp. 3d --, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020)……………………………..25

*Dodson v. St. Paul Insurance Co.*, 812 P.2d 372 (Okla. 1991)…………………………….. 13

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,*
279 F. Supp. 2d 235 (S.D. N.Y. 2003)…………………….…………………………………... 26

*Elegant Massage, LLC v. State Farm Mutual Automobile Insurance Co.,*
-- F. Supp. 3d --, 2020 WL 7249624 (E.D. Va. Dec. 9, 2020)…………………...………… 27-28

*Goodwill Industries of Central Oklahoma, Inc. v. Philadelphia Indemnity Insurance Co.,*
-- F. Supp. 3d --, 2020 WL 8004271 (W.D. Okla. Nov. 9, 2020)…........................14, 16, 19, 22

*Henry's Louisiana Grill, Inc. v. Allied Insurance Co.,*
-- F. Supp. 3d --, 2020 WL 5938755 (N.D. Ga. Oct. 6, 2020)………………………19, 20-21

*Houston v. National General Insurance Co.*, 817 F.2d 83 (10th Cir. 1987)…………………. 13

Johnson v. Hartford Financial Services Group, Inc.,
-- F. Supp. 3d --, 2021 WL 37573 (N.D. Ga. Jan. 4, 2021)…………………………...………. 24

Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v.
National Fire Insurance Co., 2007 WL 2489711 (M.D. La. 2007)…………………..……...18

Mauricio Martinez, DMD, P.A., v. Allied Insurance Co.,
-- F. Supp. 3d --, 2020 WL 5240218 (M.D. Fla. Sept. 2, 2020)………………………..... 24-25

Max True Plastering Co. v. U.S. Fidelity & Guaranty Co.,
912 P.2d 861 (Okla. 1996)……………………………………………………………………… 13

Michael Cetta, Inc. v. Admiral Indemnity Co.,
-- F. Supp. 3d --, 2020 WL 7321405 (S.D. N.Y. Dec. 11, 2020)………………………..18, 21

Mudpie, Inc. v. Travelers Casualty Insurance Co.,
-- F. Supp. 3d --, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020)……………………19-20, 27

National American Insurance Co. v. Gerlicher Co.,
260 P.3d 1279 (Okla. Civ. App. 2011)…………………………………………………...……13

Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance Co.,
17 F. Supp. 3d 323 (S.D. N.Y. 2014)……………………………………………..…..14-15

Oklahoma Schools Risk Management Trust v. McAlester Public Schools,
457 P.3d 997 (Okla. 2019)……………………………………………………………………… 12

Pappy's Barber Shops, Inc. v. Farmers Group, Inc.,
-- F. Supp. 3d --, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020)…………..................……….. 21

Philadelphia Parking Authority v. Federal Insurance Co.,
385 F. Supp. 2d 280 (S.D. N.Y. 2005)………..……………………………………….. 15, 17

Phillips v. Estate of Greenfield, 859 P.2d 1101 (Okla. 1993)…………….....……………… 14

Port Authority of New York & New Jersey v. Affiliated FM Insurance Co.,
311 F.3d 226 (3d Cir. 2002)…………………………………………….…..……...12, 13, 14

Seifert v. IMT Insurance Co.,
-- F. Supp. 3d --, 2020 WL 6120002 (D. Minn. Oct. 16, 2020)……………………...……….. 25

Serra v. Estate of Broughton, 364 P.3d 637 (Okla. 2015)………………………………….. 13

iv

Siloam Springs Hotel, LLC v. Century Surety Co.,
392 P.3d 262 (Okla. 2017)…………………………………………………….. 23-24

Smith v. CSAA Fire & Casualty Insurance Co.,
2020 WL 3146826 (W.D. Okla. June 12, 2020)……………………………………11-12

South Texas Medical Clinics, P.A. v. CNA Financial Corp.,
2008 WL 450012 (S.D. Tex. Feb. 15, 2008)……………………...……………………...20

Southern Hospitality v. Zurich American Insurance Co.,
2003 WL 23416117 (W.D. Okla. Sept. 30, 2003) ("Southern Hospitality I)……………17-18

Southern Hospitality, Inc. v. Zurich American Insurance Co.,
393 F.3d 1137 (10th Cir. 2004) ("Southern Hospitality II")……………………………17, 18

Syufy Enterprises v. Home Insurance Co. of Indiana,
1995 WL 129229 (N.D. Cal. Mar. 21, 1995)……………………………….…………...............19

Travco Insurance Co. v. Ward, 715 F. Supp. 2d 699 (E.D. Va. 2010)…………….....……... 14

Turek Enterprises, Inc. v. State Farm Mutual Automobile Insurance Co.,
-- F. Supp. 3d --, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020)…………………………… 25

Uncork & Create LLC v. Cincinnati Insurance Co.,
-- F. Supp. 3d --, 2020 WL 6436948 (S.D. W. Va. Nov. 2, 2020)…………..15-16, 19, 26, 28

United Air Lines, Inc. v. Insurance Co. of State of Pennsylvania,
439 F.3d 128 (2d Cir. 2006)…………………………………………………………..19-20

West Coast Hotel Management, LLC v. Berkshire Hathaway Guard Insurance Co.,
-- F. Supp. 3d --, 2020 WL 6440037 (C.D. Cal. Oct. 27, 2020)………………………………25

Whiskey River on Vintage, Inc. v. Illinois Casualty Co.,
--F. Supp. 3d --, 2020 WL 7258575 (S.D. Iowa Nov. 30, 2020)……………...…………….. 28

## **RULES**

Federal Rules of Civil Procedure 56……………...……………………………………… 1

## **STATUTES**

28 United States Code § 2201(a)………...……………………………………………… 1

## <u>OTHER AUTHORITIES</u>

7 Couch on Insurance § 101:7………………………………………………...11, 12, 13

10 Couch on Insurance § 148:48………………………………………………...13

## DEFENDANT COLUMBIA MUTUAL INSURANCE COMPANY'S
## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Pursuant to Fed. R. Civ. P. 56(a) and 28 U.S.C. § 2201(a), Defendant Columbia Mutual Insurance Company ("Columbia") moves this Court to enter summary judgment in its favor and to declare no coverage is available for the claim(s) made by Plaintiff Govinda, LLC d/b/a Hampton Inn Midwest City ("Govinda") against the policy of insurance in suit. Govinda's claim(s) arise out of the global COVID-19 pandemic and are simply not covered under the policy. Specifically, Columbia would show this Court as follows:

1. Govinda did not experience direct physical loss of or damage to its covered property as necessary to trigger coverage under the policy;

2. Govinda was not subject to any action of civil authority that prohibited access to its premises;

3. The alleged loss did not result from a Covered Cause of Loss because the "Virus or Bacteria" exclusion applies; and/or

4. The "Loss of Use or Loss of Market" exclusion applies.

For these reasons, and as set forth in more detail herein, Columbia is entitled to summary judgment.

### Statement of the Case

"COVID-19 is a respiratory disease caused by a new virus called SARS-CoV-2" [Exhibit 1, "What You Should Know," *available at* oklahoma.gov/covid19/what-you-should-know.html (GOVERNMENT PUBLICATIONS 0032-39)], a novel strain of coronavirus. In March of 2020, the United States officially recognized the public health risk posed by the outbreak of COVID-19 in this country. [*See, e.g.,* Doc. 15-3, 4th Am. Exec. Order 2020-07.] On March 24, 2020, the Governor of Oklahoma prohibited "[s]ocial gatherings of more than

1

ten people" and ordered "all businesses not identified as being within a critical infrastructure sector" to close for a period of 30 days unless otherwise specified. [Doc. 15-3, 4th Am. Exec. Order 2020-07.] Importantly, hotels were identified as being within a "critical infrastructure sector" and, therefore, **exempt** from the state-wide closure order. [Exhibit 2, Am. Exec. Memo. 2020-01 (3/25/20)(GOVERNMENT ORDERS 0011-16); *see also* Exhibit 3, Pl.'s Disc. Resp. at RFA nos. 3 & 5.]

At all times noted above, and to this day, Govinda has done business as a "Hampton Inn" hotel in Midwest City, Oklahoma. The City of Midwest City was generally subject to the Governor's orders noted above. In addition, the City of Midwest City passed an ordinance closing and/or limiting services provided in food establishments and personal care service businesses. [Doc. 15-5, Ordinance No. 3406.] Like the Governor's orders, however, the City of Midwest City's closure orders did not apply to hotels. [*See* Exhibit 3, Pl.'s Disc. Resp. at RFA nos. 5, 16-17.]

## Procedural History

On or about May 26, 2020, Columbia received a Notice of Loss from The Patel Law Group on behalf of Govinda, claiming a loss of business income as a result of "the global COVID-19 pandemic disaster." [Exhibit 4, Notice of Loss (CLAIM FILE 0002).] Columbia acknowledged receipt of Govinda's claim via letter dated May 27, 2020. [Exhibit 5, 5/27/20 Letter from Brant Farris (CLAIM FILE 0004-6).] On that same day, Whitten Burrage filed a Petition for Declaratory Judgment in the District Court of Oklahoma County on behalf of Govinda. [*See* Doc. 1-1.] Columbia therefore gave notice of the lawsuit filed by Whitten Burrage to The Patel Law Group and advised that investigation of Govinda's claim would

necessarily proceed via discovery in the litigation context. [Exhibit 6, 6/8/20 Letter from Brant Farris (*sans* enclosure) (CLAIM FILE 0219).] Then, on June 10, 2020, Columbia removed this lawsuit to federal court. [*See* Doc. 1.]

## Statement of Undisputed Facts

Columbia submits there is no genuine dispute as to any material fact below:

1.      Govinda operates a "Hampton Inn" hotel in Midwest City, Oklahoma. [Doc. 15, Amended Complaint for Declaratory Judgment at p. 1, ¶ 1.]

2.      From November 8, 2007, to November 8, 2008, Govinda (and, specifically, the subject hotel) was insured under a commercial lines policy (PHPK271383) issued by Philadelphia Indemnity Insurance Company. [Exhibit 7, 2007-08 Common Policy Declarations (PHILADELPHIA 0211).]

3.      The 2007-08 policy issued to Govinda included Form CP01400706, "Exclusion of Loss Due to Virus or Bacteria." [Exhibit 8, Advisory Notice to Policyholders (PHILADELPHIA 0237); Exhibit 9, Form Schedule (PHILADELPHIA 0241); Exhibit 10, Exclusion (PHILADELPHIA 0303).]

4.      On February 7, 2008, Govinda's insurance agent specifically advised:

**NOTE:  All insurance policies contain conditions and exclusions. Therefore, it is very important that you read your policy carefully and become familiar with the terms of your insurance agreement. If you discover there are coverages not provided that you desire, please advise and we will do our best to obtain additional insurance.**

[Exhibit 11, Letter to Hampton Inn – MWC/Govinda (PHILADELPHIA 0190).]

5.      From November 8, 2008, to November 8, 2009, Govinda (and, specifically, the subject hotel) was insured under a commercial lines policy (PHPK361362) issued by Philadelphia

Indemnity Insurance Company. [Exhibit 12, 2008-09 Common Policy Declarations (PHILADELPHIA 0006).]

6.      The 2008-09 policy issued to Govinda included Form CP01400706, "Exclusion of Loss Due to Virus or Bacteria." [Exhibit 13, Advisory Notice to Policyholders (PHILADELPHIA 0028); Exhibit 14, Form Schedule (PHILADELPHIA 0032); Exhibit 15, Exclusion (PHILADELPHIA 0096).]

7.      On September 28, 2010, Columbia submitted a quote for Govinda. [Exhibit 16, 9/28/10 Email re: BOP Quote – Govinda Inc & Businessowners Policy Worksheet attached thereto ("BOP Quote") (UNDERWRITING 0075-78).]

8.      The Businessowners Policy Worksheet attached to the quote included Form BP06010107, "Exclusion of Loss Due to Virus or Bacteria." [Exhibit 16, BOP Quote.]

9.      From November 8, 2010, to November 8, 2011, Govinda (and, specifically, the subject hotel) was insured under a businessowners policy (BOPOK26044) issued by Columbia. [Exhibit 17, 2010-11 Declarations (GOVINDA 000003-6).[1]]

10.     The 2010-11 BOP issued to Govinda included Form BP06010107, "Exclusion of Loss Due to Virus or Bacteria." [Exhibit 17, 2010-11 Declarations; Exhibit 18, Exclusion (GOVINDA 000072).]

11.     From November 8, 2011, to November 8, 2012, Govinda (and, specifically, the subject hotel) was insured under a businessowners policy (BOPOK26044) renewed by Columbia. [Exhibit 19, 2011-12 Declarations (GOVINDA 000085-88).]

---

[1] All policies with "GOVINDA" in the Bates-number were produced by Govinda in discovery and are therefore indisputable.

4

12.    The 2011-12 BOP issued to Govinda included a "Virus or Bacteria" exclusion in Section **I.B.1.j**. [Exhibit 20, 2011-12 Policy (GOVINDA 000106-108).]

13.    From November 8, 2012, to November 8, 2013, Govinda (and, specifically, the subject hotel) was insured under a businessowners policy (BOPOK26044) renewed by Columbia. [Exhibit 21, 2012-13 Declarations (GOVINDA 000154-157).]

14.    The 2012-13 BOP issued to Govinda included a "Virus or Bacteria" exclusion in Section **I.B.1.j**. [Exhibit 22, 2012-13 Policy (GOVINDA 000189-191).]

15.    From November 8, 2013, to November 8, 2014, Govinda (and, specifically, the subject hotel) was insured under a businessowners policy (BOPOK26044) renewed by Columbia. [Exhibit 23, 2013-14 Declarations (GOVINDA 000238-241).]

16.    The 2013-14 BOP issued to Govinda included a "Virus or Bacteria" exclusion in Section **I.B.1.j**. [Exhibit 24, 2013-14 Policy (GOVINDA 000296-299).]

17.    From November 8, 2014, to November 8, 2015, Govinda (and, specifically, the subject hotel) was insured under a businessowners policy (BOPOK26044) renewed by Columbia. [Exhibit 25, 2014-15 Declarations (BOPOK26044 2014 (0342-0345)).[2]]

18.    The 2014-15 BOP issued to Govinda included a "Virus or Bacteria" exclusion in Section **I.B.1.j**. [Exhibit 26, 2014-15 Policy (BOPOK26044 2014 (0399-0402)).[3]]

19.    From November 8, 2015, to November 8, 2016, Govinda (and, specifically, the subject hotel) was insured under a commercial multiple peril policy (CMPOK0000030002) issued by

---

[2] For purposes of this Motion **only**, Columbia waives the confidentiality of the pages attached hereto as Exhibit 25.

[3] For purposes of this Motion **only**, Columbia waives the confidentiality of the pages attached hereto as Exhibit 26.

Columbia. [Exhibit 27, 2015-16 Common Policy Declarations (GOVINDA 000362).]

20.     The 2015-16 CMP issued to Govinda included an "Exclusion Of Loss Due To Virus Or Bacteria" (CP01400706). [Exhibit 28, Forms Schedule (GOVINDA 000428); Exhibit 29, Exclusion (GOVINDA 000430).]

21.     From November 8, 2016, to November 8, 2017, Govinda (and, specifically, the subject hotel) was insured under a commercial multiple peril policy (CMPOK0000030002) renewed by Columbia. [Exhibit 30, 2016-17 Common Policy Declarations (GOVINDA 000498).]

22.     The 2016-17 CMP issued to Govinda included an "Exclusion Of Loss Due To Virus Or Bacteria" (CP01400706). [Exhibit 31, Forms Schedule (GOVINDA 000516).]

23.     From November 8, 2017, to November 8, 2018, Govinda (and, specifically, the subject hotel) was insured under a commercial multiple peril policy (CMPOK0000030002) renewed by Columbia. [Exhibit 32, 2017-18 Common Policy Declarations (GOVINDA 000534).]

24.     The 2017-18 CMP issued to Govinda included an "Exclusion Of Loss Due To Virus Or Bacteria" (CP01400706). [Exhibit 33, Forms Schedule (GOVINDA 000601); Exhibit 34, Exclusion (GOVINDA 000603).]

25.      From November 8, 2018, to November 8, 2019, Govinda (and, specifically, the subject hotel) was insured under a commercial multiple peril policy (CMPOK0000030002) renewed by Columbia. [Exhibit 35, 2018-19 Common Policy Declarations (GOVINDA 000681).]

26.     The 2018-19 CMP issued to Govinda included an "Exclusion Of Loss Due To Virus Or Bacteria" (CP01400706). [Exhibit 36, Forms Schedule (GOVINDA 000756); Exhibit 37, Exclusion (GOVINDA 000758).]

27.     From November 8, 2019, to November 8, 2020, Govinda (and, specifically, the subject

6

hotel) was insured under a commercial multiple peril policy (CMPOK000030002) renewed by

Columbia. [Doc. 15-1, Policy.] **This is the Subject Policy.**

28.     The Subject Policy includes a Business Income (and Extra Expense) Coverage Form

(CP00301012). [Doc. 15 at p. 2, ¶ 5; Doc. 15-1 at pp. 79-80, 99-107.]

29.     Govinda's coverage under the Business Income (and Extra Expense) Coverage Form

is for "business income other than rental." [Doc 15-1 at p. 79.]

30.     The Business Income (and Extra Expense) Coverage Form provides coverage for

Business Income as follows:

> We will pay for the actual loss of Business Income you sustain due to the
> necessary "suspension" of your "operations" during the "period of restoration".
> The "suspension" must be caused by direct physical loss of or damage to
> property at premises which are described in the Declarations and for which a
> Business Income Limit Of Insurance is shown in the Declarations. The loss or
> damage must be caused by or result from a Covered Cause of Loss.

[Doc. 15 at pp. 2-3, ¶ 6; Doc. 15-1 at p. 99.]

31.     The Business Income (and Extra Expense) Coverage Form provides coverage for

Extra Expense as follows:

> **b.**     Extra Expense means necessary expenses you incur during the "period
> of restoration" that you would not have incurred if there had been no
> direct physical loss or damage to property caused by or resulting from a
> Covered Cause of Loss.
> We will pay Extra Expense (other than the expense to repair or replace
> property) to:
> **(1)**     Avoid or minimize the "suspension" of business and to continue
> operations at the described premises….
> **(2)**     Minimize the "suspension" of business if you cannot continue
> "operations".
> We will also pay Extra Expense to repair or replace property, but only to the
> extent it reduces the amount of loss that otherwise would have been payable
> under this Coverage Form.

[Doc. 15 at pp. 5-6, ¶ 11; Doc. 15-1 at pp. 99-100.]

32.     The Business Income (and Extra Expense) Coverage Form provides additional

coverage for Civil Authority as follows:

> When a Covered Cause of Loss causes damage to property other than property
> at the described premises, we will pay for the actual loss of Business Income
> you sustain and necessary Extra Expense caused by action of civil authority that
> prohibits access to the described premises, provided that both of the following
> apply:
>> **(1)**     Access to the area immediately surrounding the damaged
>>             property is prohibited by civil authority as a result of the damage,
>>             and the described premises are within that area but are not more
>>             than one mile from the damaged property; and
>> **(2)**     The action of civil authority is taken in response to dangerous
>>             physical conditions resulting from the damage or continuation of
>>             the Covered Cause of Loss that caused the damage, or the action
>>             is taken to enable a civil authority to have unimpeded access to
>>             the damaged property.
>
> Civil Authority Coverage for Business Income will begin 72 hours after the time
> of the first action of civil authority that prohibits access to the described
> premises and will apply for a period of up to four consecutive weeks from the
> date on which such coverage began.
>
> Civil Authority Coverage for Extra Expense will begin immediately after the
> time of the first action of civil authority that prohibits access to the described
> premises and will end:
>> **(1)**     Four consecutive weeks after the date of that action; or
>> **(2)**     When your Civil Authority Coverage for Business Income ends;
>>             whichever is later.

[Doc. 15 at p. 4, ¶ 9; Doc. 15-1 at p. 100.]

33.     The Business Income (and Extra Expense) Coverage Form provides additional

coverage for Extended Business Income as follows:

> If the necessary "suspension" of your "operations" produces a Business Income
> loss payable under this policy, we will pay for the actual loss of Business Income
> you incur during the period that:
>
> **(a)**     Begins on the date property (except "finished stock") is actually repaired,
>             rebuilt or replaced and "operations" are resumed; and
> **(b)**     Ends on the earlier of:
>> **(i)**      The date you could restore your "operations", with reasonable
>>              speed, to the level which would generate the business income
>>              amount that would have existed if no direct physical loss or

8

damage had occurred; or

**(ii)**   60 consecutive days after the date determined in **(1)(a)** above.
However, Extended Business Income does not apply to loss of Business
Income incurred as a result of unfavorable business conditions caused by the
impact of the Covered Cause of Loss in the area where the described premises
are located.

Loss of Business Income must be caused by direct physical loss or damage at
the described premises caused by or resulting from any Covered Cause of Loss.

[Doc. 15 at p. 5, ¶ 10; Doc. 15-1 at p. 101.]

34.   The Business Income (and Extra Expense) Coverage Form defines "suspension" as

"the slowdown or cessation of your business activities." [Doc. 15 at p. 3, ¶ 8; Doc. 15-1 at p.

107.]

35.   The Business Income (and Extra Expense) Coverage Form defines "operations" as

"your business activities occurring at the described premises." [Doc. 15 at p. 3, ¶ 8; Doc. 15-1

at p. 107.]

36.   The Business Income (and Extra Expense) Coverage Form defines "period of

restoration" as the period of time that:

**a.**   Begins:
  **(1)**   72 hours after the time of direct physical loss or damage for
  Business Income Coverage; or
  **(2)**   Immediately after the time of direct physical loss or damage for
  Extra Expense Coverage;
  caused by or resulting from any Covered Cause of Loss at the described
  premises; and
**b.**   Ends on the earlier of:
  **(1)**   The date when the property at the described premises should be
  repaired, rebuilt or replaced with reasonable speed and similar
  quality; or
  **(2)**   The date when business is resumed at a new permanent location.

[Doc. 15-1 at p. 107.]

37.   Where, as here, "Special" is shown in the Declarations, "Covered Causes of Loss means

direct physical loss unless the loss is excluded or limited in this policy." [Doc. 15 at p. 3, ¶ 7; Doc. 15-1 at pp. 78-79, 124.]

38.     The "Causes of Loss – Special Form" included in the Subject Policy states:

> **2.**     We will not pay for loss or damage caused by or resulting from any of the following:
> **b.**     Delay, loss of use or loss of market.

[Doc. 15-1 at p. 126.]

39.     The Subject Policy also includes an Exclusion of Loss Due to Virus or Bacteria (Form CP01400706) which states, "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." [Doc. 15-1 at pp. 80, 82; *see also* Exhibit 3, Pl.'s Disc. Resp. at RFA no. 13.]

40.     The Exclusion of Loss Due to Virus or Bacteria "applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover…business income, extra expense or action of civil authority." [Doc. 15-1 at p. 82.]

41.     Govinda never requested a policy of commercial property insurance from Columbia that did **not** contain language excluding coverage for losses due to virus or bacteria. [Exhibit 3, Pl.'s Disc. Resp. at RFA no. 2.]

42.     In March of 2020, government officials issued various orders addressing the impending threat of COVID-19 in Oklahoma. [*E.g.,* Doc. 15 at pp. 6-7, ¶¶ 13-15; Doc. 15-3; Doc. 15-5.]

43.     The Governor of Oklahoma identified hotels as being within a "critical infrastructure sector" not required to close to the public. [Exhibit 2, Am. Exec. Memo. 2020-01; *see also*

10

Exhibit 3, Pl.'s Disc. Resp. at RFA no. 3.]

44.     Govinda (and, specifically, the subject hotel) did not close in response to any federal, state, or local government order. [Exhibit 3, Pl.'s Disc. Resp. at Interrog. no. 4 & RFA no. 5.]

45.     Govinda did not lose access to the subject hotel as a result of any direct physical loss of or damage to property. [Exhibit 3, Pl.'s Disc. Resp. at RFA nos. 19-20.]

46.     Govinda did not lose access to the subject hotel as a result of any federal, state, or local government order. [Exhibit 3, Pl.'s Disc. Resp. at RFA nos. 16-17.]

47.     The only "dangerous physical condition" alleged by Govinda to have caused it to sustain financial losses was "the COVID-19 pandemic disaster." [Exhibit 3, Pl.'s Disc. Resp. at Interrog. no. 5; Exhibit 4, Notice of Loss; *see also* Doc. 15 at pp. 7-9, ¶¶ 16, 18 & 20.]

48.     COVID-19 is a disease caused by a virus. [Exhibit 1, "What You Should Know"; Exhibit 38, "Business Interruption Insurance," *available at* oid.ok.gov/covid-19/business-interruption-insurance/(referring to COVID-19 as a viral infection) (GOVERNMENT PUBLICATIONS 0047); *see also* Doc. 15-3 (confirming Oklahoma's "seventeenth case of a novel coronavirus ('COVID-19')").]

## **Argument and Authority**

"The purpose of an 'All-Risk' policy is to insure losses when the cause of the loss is unknown or the specific risk was not explicitly contemplated by either party. This purpose is, in part, accomplished by a mechanism of burden-shifting as to which party bears the risk of an unexplained or uncontemplated loss." Smith v. CSAA Fire & Cas. Ins. Co., 2020 WL 3146826 at *3 (W.D. Okla. June 12, 2020) (quoting 7 Couch on Ins. § 101:7). Here, Govinda has the initial burden "to prove, by a preponderance of the evidence, that the...damage to their

[property] was the result of a covered peril." *See* id. at *2 (citing Okla. Sch. Risk Mgmt. Trust v. McAlester Pub. Sch., 457 P.3d 997 (Okla. 2019)). The burden then shifts to Columbia to prove the loss is excluded. *See* id. While the term "All-Risk" "may raise the insured's expectations that the policy provides coverage for all losses that are not intentional or expected…, this expectation should only be enforced by the court if it is reasonable in light of the actual policy provisions or if there was a promise of coverage that the insurer may have induced." Id. at *3 (quoting 7 Couch on Ins. § 101:7).

In Port Authority of New York & New Jersey v. Affiliated FM Insurance Co., 311 F.3d 226 (3d Cir. 2002), the "Plaintiffs made claims against the defendants under their first-party insurance policies which contained one of the following statements of the perils within the scope of the policies:

> 'ALL RISKS of physical loss or damage occurring during the period of this policy including loss of revenue and business interruption, are insured against, except as otherwise specifically excluded.
>
> ALL RISKS of physical loss or damage occurring during the period of this policy including loss of revenue ... are insured against, except as otherwise specifically excluded.
>
> ALL RISKS of direct physical loss or damage occurring during the period of this policy including loss of revenue ... are insured against, except as otherwise specifically excluded.'"

Id. at 231. Even in view of this explicit declaration of "all risks" coverage, however, the court noted that, under "all risks" policies, "the insurer agrees to pay for all fortuitous losses that are not excluded under the contract. It is worthy of note, though, that in the insurance industry, 'all risks' does not mean 'every risk.'" Id. at 234. Where, as here, multiple losses are expressly excluded, "the description of the policy as 'All Risks' is rather a misnomer." Id. (quoting Aetna

Cas. & Sur. Co. v. Yates, 344 F.2d 939 (5th Cir. 1965)); *see also* 7 Couch on Ins. § 101:7 (noting

that "all risks" policies "are not considered an 'all loss' policy because they contain various

exclusions and do not in fact cover all losses").

"The interpretation of an insurance contract and whether it is ambiguous is determined

by the court as a matter of law." Serra v. Estate of Broughton, 364 P.3d 637, 641 (Okla. 2015).

In making its determination, a court must consider the terms of an insurance policy "not in a

technical but in a popular sense" and "according to their plain, ordinary and accepted use in

common speech." Id. at n. 6 (quoting Houston v. Nat'l Gen'l Ins. Co., 817 F.2d 83 (10th Cir.

1987)). A court "will not make a better contract by altering a term for a party's benefit" or

"indulge in forced or constrained interpretations" to reach a particular result. *See* Max True

Plastering Co. v. U.S. Fid. & Guar. Co., 912 P.2d 861, 869 (Okla. 1996).

## I.   Govinda did not experience direct physical loss of or damage to property.

In Oklahoma, "[t]he general declaration of insurance coverage, as established by the

insurance policy and limited by its provisions, normally determines the insurance carrier's

liability, and the insured's respective rights under the contract by identifying what risks are

covered and excluded by the policy." Nat'l Am. Ins. Co. v. Gerlicher Co., 260 P.3d 1279, 1284

(Okla. Civ. App. 2011) (citing Dodson v. St. Paul Ins. Co., 812 P.2d 372 (Okla. 1991)); *see also*

Port Authority at 234 (quoting 10 Couch on Ins. §148:48 for the proposition that "a loss which

does not properly fall within the coverage clause cannot be regarded as covered thereby"). The

"general declaration of insurance coverage" in the Subject Policy generally provides:

> We will pay for the actual loss of Business Income you sustain due to the
> necessary "suspension" of your "operations" during the "period of restoration".
> **The "suspension" must be caused by direct physical loss of or damage**

**to property** at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss....

[Doc. 15-1 at p. 99 (emphasis added).] For purposes of this Motion only, Columbia does not dispute that Govinda likely experienced a "suspension" (*i.e.,* a "slowdown") of "operations." However, any "suspension" must be caused by "direct physical loss of or damage to" property. Govinda cannot carry its burden of proving this prerequisite to coverage.

The policy does not define what constitutes a "direct physical loss of or damage to" property. Accordingly, the phrase "is accorded its ordinary, plain meaning and enforced so as to carry out the parties' intentions." Bituminous Cas. Corp. v. Cowen Constr., Inc., 55 P.3d 1030, 1033 (Okla. 2002) (citing Phillips v. Estate of Greenfield, 859 P.2d 1101 (Okla. 1993)).

Relying on dictionary definitions, this Court found in a similar case that "a direct physical loss results from an actual, or material, deprivation of…property" or "a demonstrable, physical alteration of the property which excludes alleged losses that are intangible." *See* Goodwill Indus. of Central Okla., Inc. v. Phila. Indem. Ins. Co., -- F. Supp. 3d --, 2020 WL 8004271 at *3 (W.D. Okla. Nov. 9, 2020) (internal alterations omitted). Other cases have found the "critical distinction" in finding a "direct physical loss" is that the property is somehow rendered "uninhabitable." *See, e.g.,* Travco Ins. Co. v. Ward, 715 F. Supp. 2d 699, 709 (E.D. Va. 2010) (citing Port Authority for the proposition that "physical loss or damage occurs only if an actual release of asbestos fibers has resulted in contamination of the property, or the structure is made useless or uninhabitable"); Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co., 17 F. Supp. 3d 323, 331-2 (S.D. N.Y. 2014) ("[T]he Court is unaware of authority supporting [an] argument that 'direct physical loss or damage' should be read to

14

include [or] to extend to mere loss of use of a premises, where there has been no physical damage to such premises.") (citing <u>Phila. Parking Auth. v. Fed. Ins. Co.</u>, 385 F. Supp. 2d 280 (S.D. N.Y. 2005), for the proposition that "'direct physical' modifies both loss and damage, and therefore the interruption in business must be caused by some physical problem with the covered property which must be caused by a 'covered cause of loss'") (internal quotations & alterations omitted). The Oklahoma Insurance Department agrees that, "[i]n circumstances where a business has been closed as part of a mandatory or voluntary closure—but is otherwise still habitable and uncontaminated—it has probably not suffered a direct physical loss since infectious diseases arising from human-to-human transmissions generally will not qualify as property damage." [*See* Exhibit 38, "Business Interruption Insurance."] Simply stated, "COVID-19 harms people, not property." <u>Uncork & Create LLC v. Cincinnati Ins. Co.</u>, -- F. Supp. 3d --, 2020 WL 6436948 at *3 (S.D. W. Va. Nov. 2, 2020).

Govinda does not allege that the coronavirus infected its premises, but instead refers to the pandemic generally and/or the closure orders issued in response to same. [*See* Undisputed Facts No. 47.] That is, Govinda's claim is premised on the idea that the alleged business interruption *itself* is a direct physical loss. [*See* Doc. 15 at p. 8, ¶ 18.] Just because the subject hotel was not fully occupied during the pandemic does not mean it was **uninhabitable**, however. In <u>Uncork & Create LLC</u>, the court explained:

> There is a similar risk of exposure to the virus in any public setting, regardless of artful pleading as to the likelihood of the presence of the virus. …[E]ven when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property. Because routine cleaning, perhaps performed with greater frequency and care, eliminates the virus on surfaces, there would be nothing for an insurer to cover, and a

covered "loss" is required to invoke the additional coverage for loss of business
income under the Policy.

Id. at *5. "The majority of courts to address the issue…have found that COVID-19 and

governmental orders closing businesses to slow the spread of the virus do not cause physical

damage or physical loss to insured property." Id. at *4. [*See also* Order (Doc. 35) at pp. 6-7 &

n.1, W.D. Okla. case no. 20-cv-00511-R.] Indeed, this Court found that a "loss of use" is an

**intangible** loss, **not** a direct physical loss, and is therefore not covered. *See* Goodwill at **2-

3. [*See also* Order (Doc. 35) at pp. 9-10, W.D. Okla. case no. 20-cv-00511-R ("[A] 'direct

physical loss' unambiguously requires alleging some tangible damage to property, and

[Plaintiff] did not allege anything other than business closures due to government orders.").]

The same result is warranted here.

## II.     Govinda was not subject to any action of civil authority that prohibited access to its premises.

In addition to business income coverage available in the event of direct physical loss

of or damage to property, the policy also affords "civil authority coverage" under certain

circumstances as follows:

> When a Covered Cause of Loss causes damage to property other than property
> at the described premises, we will pay for the actual loss of Business Income
> you sustain and necessary Extra Expense caused by action of civil authority that
> prohibits access to the described premises, provided that both of the following
> apply:
> **(1)**    Access to the area immediately surrounding the damaged property is
>         prohibited by civil authority as a result of the damage, and the described
>         premises are within that area but are not more than one mile from the
>         damaged property; and
> **(2)**    The action of civil authority is taken in response to dangerous physical
>         conditions resulting from the damage or continuation of the Covered
>         Cause of Loss that caused the damage, or the action is taken to enable a
>         civil authority to have unimpeded access to the damaged property.

[Doc. 15-1 at p. 100.] This coverage also requires damage to property, as well as an act of civil authority prohibiting access to the insured premises as a result of the damage. Again, Govinda cannot carry its burden of proving these elements.

For purposes of this coverage part, access may be prohibited "where the order of a civil authority required the insured's premises **to close**." *See* Southern Hosp., Inc. v. Zurich Amer. Ins. Co., 393 F.3d 1137, 1141 (10th Cir. 2004) ("Southern Hospitality II") (emphasis added); *see also* Phila. Parking Auth. at 289 (finding the FAA's "no fly" order following 9/11 "deal[t] only with the grounding of airplanes" and, while it "may have temporarily obviated the need for Plaintiff's parking services" at the airport, it "did not prohibit access to Plaintiff's garages and therefore cannot be used to invoke coverage under Plaintiff's policy"). Although Govinda's business may have been impacted by the COVID-19 pandemic, the hotel did not (and was not ordered to) close. [Undisputed Facts Nos. 43-44.] Govinda also admits it did not lose access to the subject hotel. [Undisputed Facts Nos. 45-46.]

Govinda's claim is similar to the one at issue in Southern Hospitality v. Zurich American Insurance Co., 2003 WL 23416117 (W.D. Okla. Sept. 30, 2003) ("Southern Hospitality I"), wherein Southern Hospitality claimed access to its hotels was hindered by a no-fly order issued by the FAA following 9/11. Zurich denied coverage on grounds that the order did not prohibit access to the insured hotels, which remained open for business. The court agreed with the Zurich as follows:

> When read as a whole, it is clear that the policy is intended to cover losses from some event which directly affects the hotels. Here, the FAA Order did not have a direct effect on Plaintiffs' hotels; rather, the Order's effect was tangential. While the FAA Order may have had an impact on Plaintiffs' business, it did not prevent people from getting to the hotels, it merely limited the means of travel available to patrons of Plaintiffs' hotels. The policy requires a civil order which

17

bars access to the property on which Plaintiffs' hotels sit. No such order exists
in this case.

Id. at *2. The Tenth Circuit affirmed the trial court's finding of no coverage because the FAA
order prohibited access to airlines flights but did not prohibit access to hotel operations.
Southern Hospitality II, 393 F.3d at 1140; see also, e.g., Kean, Miller, Hawthorne, D'Armond
McCowan & Jarman, LLP v. Nat'l Fire Ins. Co., 2007 WL 2489711 at *4 (M.D. La. 2007)
(citing Southern Hospitality II, inter alia, as holding that "coverage did not exist under such a
clause unless the action of civil authority actually and completely prohibited access to the insured
premises").

    Not only must access to the insured property be prohibited in order to trigger "Civil
Authority" coverage, access must be prohibited due to "damage to property" resulting from a
Covered Cause of Loss. [Doc. 15-1 at p. 100.] See also, e.g., Southern Hospitality II at 1141 &
n.2 (Even assuming there is "a direct nexus between the civil authority order and the
suspension of the insured's business," there must also be "a qualifying 'direct physical loss of
or damage to property, other than at the described premises.'"). Again, Govinda does not
allege any property damage in the surrounding area, but only that the orders themselves resulted
in a loss of use of its own property. This allegation is insufficient to trigger coverage. See, e.g.,
Michael Cetta, Inc. v. Admiral Indem. Co., -- F. Supp. 3d --, 2020 WL 7321405 at *8 (S.D.
N.Y. Dec. 11, 2020) ("As a result of COVID-19 closure orders throughout the country, many
businesses have brought lawsuits claiming entitlement to coverage under provisions materially
similar to those at issue…here. And nearly every court to address this issue has concluded that
loss of use of a premises due to a governmental closure order does not trigger business income
coverage premised on physical loss to property.").

18

Government orders issued in response to the coronavirus were designed to reduce the number of people at any given location and, thereby, reduce the rate of infection. *See, e.g.,* Uncork & Create LLC at *5 ("COVID-19 poses a serious risk to people gathered in proximity to one another, and the governmental orders closing certain businesses were designed to ameliorate that risk."); Goodwill at *5 (finding closure orders such as those at issue here "resulted from the ability, or capability, of COVID-19 to 'induc[e] physical distress, illness or disease'"). That is, closure orders generally address the threat to public health and safety posed by the coronavirus, **not** any prior damage or physical threat to insured property. *See also* Henry's Lou. Grill, Inc. v. Allied Ins. Co., -- F. Supp. 3d --, 2020 WL 5938755 at *5 (N.D. Ga. Oct. 6, 2020); Mudpie, Inc. v. Travelers Cas. Ins. Co., -- F. Supp. 3d --, 2020 WL 5525171 at *7 (N.D. Cal. Sept. 14, 2020).

The stated purpose of the order issued by the Governor of Oklahoma was "to prepare for and respond to COVID-19 and to protect the health and safety of the public." [Doc. 15-3; *see also* Undisputed Facts No. 42.] In Mudpie, the court rejected a claim made pursuant to a similar "Safer at Home" order as follows:

> Under the Civil Authority provision, Mudpie must establish the "requisite causal link between damage to adjacent property and denial of access" to its store. Syufy Enters. v. Home Ins. Co. of Ind., …1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995); *see also* Dickie Brennan & Co. v. Lexington Ins. Co., 636 F.3d 683, 686 (5th Cir. 2011) (finding that civil authority coverage requires a "causal link between prior property damage and the civil authority order"). In Syufy Enterprises, a theater owner closed his theaters in response to the curfew orders which were imposed by California civil authorities following the Rodney King verdict. 1995 WL 129229, at *1. Finding that the curfews were not imposed "because of damage to adjacent property" but instead "to prevent 'potential' looting, rioting, and resulting property damage," the court concluded that the theater owner was not entitled to civil authority coverage. Id. at *2-3; *see also* United Air Lines, Inc. v. Ins. Co. of State of Pa., 439 F.3d 128, 129, 134 (2d Cir. 2006) (affirming the district court's denial of coverage under a similar civil

19

authority provision where the government's decision to halt airport operations on September 11, 2001 "was based on fears of future attacks" rather than prior physical damage to an adjacent property); S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp., …2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008) (finding no coverage under an analogous civil authority provision where the government evacuation order "was issued due to the anticipated threat of damage to the county and not due to property damage that had occurred").

Mudpie's allegations establish that the government closure orders were intended to prevent the spread of COVID-19. *See* ECF No. 1 ¶ 24 (California's Safer at Home Order was issued "to control the spread of COVID-19."). Because the orders were preventative–and absent allegations of damage to adjacent property –the complaint does not establish the requisite causal link between prior property damage and the government's closure order.***Accordingly, the Court finds as a matter of law that Mudpie is not entitled to Civil Authority coverage.

Id. at *7. In Henry's Louisiana Grill, the plaintiff/restaurant closed its dining room after the governor declared a public health emergency as a result of COVID-19. *See* id. at **1-2. The court rejected the plaintiff's claim made on a Civil Authority provision identical to the one at issue here, as follows:

The Plaintiffs argue that because of the community spread of COVID-19, property other than its own had been damaged by the virus, which led to the issuance of the Governor's Executive Order…. Even accepting the Plaintiffs' allegations of damage to other property as true, the Plaintiffs have not pleaded sufficient facts to demonstrate coverage under the Civil Authority provision. The provision contains several clear conditions precedent for coverage. First, the Plaintiffs have pleaded no facts regarding a civil authority's action that prohibited access to the premises. The Governor's Executive Order had no substantive provisions limiting access to private businesses or their operations. While the Order could be read as "advising" residents to stay home, the Order itself does not represent an action to prohibit access to the described premises…. And the Plaintiffs point to no other action by a civil authority that could have prohibited access to their dining rooms at the time of the closure. Second, the Plaintiffs pleaded no facts that the areas "immediately surrounding" the damaged properties were blocked by the civil authority. In fact, the Plaintiffs do not identify any particular property around their premises which was damaged by COVID-19 or had its access restricted by a civil authority. Finally, with no damaged property or civil authority action identified, the Plaintiffs cannot plead facts that the civil authority's access limitations resulted from COVID-19 or were necessary to allow the civil authority's unimpeded access to

area. Thus, by failing to plead sufficient facts to satisfy several conditions precedent, the Plaintiffs cannot claim coverage under the Civil Authority provision.

Id. at *6 (internal citations omitted).

To the extent Govinda's claim suffers from the same failings, the same conclusion is warranted here. This is particularly true given that Govinda was not ordered to close and, in fact, did not close. [Undisputed Facts Nos. 43-44.] *See also, e.g.,* Michael Cetta at *12 ("The fact that [the plaintiff] could have continued to operate its restaurant in some capacity is fatal to [the] claims for civil authority coverage."). Govinda admits access to the subject hotel was not prohibited. [Undisputed Facts Nos. 45-46.] Even if closure orders "made it illegal for [the plaintiff] to allow patrons into its [facility]" (which is not the case here), "under the plain meaning of the Policy, if employees (but not patrons) were allowed access to the indoor portions of the [facility], civil authority did not prohibit access" so as to trigger coverage. Id. (citing Pappy's Barber Shops, Inc. v. Farmers Group, Inc., -- F. Supp. 3d --, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020)).

### III. The "Virus or Bacteria" exclusion in the policy precludes coverage for Govinda's claim.

Even if Govinda could show direct physical loss or damage and/or an applicable order of civil authority, the loss or damage must arise out of a "Covered Cause of Loss" not otherwise excluded or limited by the express terms of the policy. COVID-19 is not a "Covered Cause of Loss" but falls squarely within the **EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA**, which states:

> **A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property

> damage to buildings or personal property and forms or endorsements
> that cover business income, extra expense or action of civil authority.
> **B.**   We will not pay for loss or damage caused by or resulting from any virus,
> bacterium or other microorganism that induces or is capable of inducing
> physical distress, illness or disease.

[Doc. 15-1 at p. 82.] This exclusion was included in the policies issued to Govinda by Philadelphia in 2007 and 2008. [Undisputed Facts Nos. 3 & 6.] It was specifically referenced in the Businessowners Policy Worksheet provided with Columbia's initial quote to Govinda in 2010 [Undisputed Facts Nos. 7-8] and has been included in every policy issued to Govinda by Columbia since 2010 [Undisputed Facts Nos. 9-27 & 39]. Govinda has never requested a policy from Columbia which did not exclude coverage for losses due to virus or bacteria. [Undisputed Facts No. 41.] And, this Court has already held that an exclusion identical to that at issue here "precludes coverage 'resulting from' any virus '*capable* of inducing physical distress, illness or disease,'" and "would encompass a scenario where 'suspected contamination' qualifies." Goodwill at *5 (internal citations omitted). This Court has also rejected the idea that an insurer could sneak the exclusion into a policy without consideration to its insured. [*See* (Doc. 35) at pp. 11-12, W.D. Okla. case no. 20-cv-00511-R (noting that, even if "at one point in the relationship between Goodwill and PIIC, Goodwill was insured under a policy without a Virus Endorsement…, "Oklahoma courts have held that 'the renewal of an insurance policy is a new contract'") (quoting Dalpaos-Lawrence v. Guideone Am. Ins. Co., 243 Fed. App'x 358 (10th Cir. 2007) (citing Wynn v. Avemco Ins. Co., 963 P.2d 572 (Okla. 1998)) (internal alterations omitted).]

Govinda quoted the former President of the United States for the idea that it can "expect to be paid" as a matter of public policy due to the unprecedented circumstances posed

by the pandemic. [*See* Doc. 15 at pp. 7-8, ¶ 17.] However, Oklahoma case law supports the idea that "public policy" or "reasonable expectations" will not prevent application of a clear and unambiguous exclusion.

For example, in <u>Siloam Springs Hotel, LLC v. Century Surety Co.</u>, 392 P.3d 262 (Okla. 2017), several guests of the Siloam Springs Hotel allegedly suffered carbon monoxide poisoning due to leakage from the hotel's indoor swimming pool heater. *See* <u>id.</u> at 264. Century denied the hotel's claim based on the "Indoor Air Exclusion" in the hotel's policy which provided that coverage did not apply to "'[b]odily injury', 'property damage', or 'personal and advertising injury' arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating pathogenic or allergen qualities or characteristics of indoor air regardless of cause." <u>Id.</u> at 264.

The parties embarked on a long, litigious journey and, along the way, the Tenth Circuit noted, "although the parties argue the coverage issue exclusively by reference to generally applicable contract principles, it is far from clear the coverage issue at the center of this case is completely devoid of public policy implications." *See* <u>id.</u> at 265. The Tenth Circuit then submitted this certified question to the Oklahoma Supreme Court:

> Does the public policy of the State of Oklahoma prohibit enforcement of the Indoor Air Exclusion, which provides that the insurance afforded by the policy does not apply to "'Bodily injury', 'property damage', or 'personal and advertising injury' arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating pathogenic or allergen qualities or characteristics of indoor air regardless of cause"?

<u>Id.</u> The Oklahoma Supreme Court found that it did not. <u>Id.</u> at 267. In upholding the exclusion, the Court noted:

> Under Oklahoma law, insurance policies are issued pursuant to statutes, and the

provisions of those statutes are given force and effect as if written into policy....
The parties to an insurance contract agree upon the terms of the contract and
are free to limit or restrict an insurer's liability.... The court will interpret the
policy in light of the statute, but will not rewrite the contract.... Looking beyond
the express terms of the statutes, in Oklahoma, a contract violates public policy
only if it clearly tends to injure public health, morals or confidence in the
administration of law, or if it undermines the security of individual rights with
respect to either personal liability or private property.... Courts will exercise their
power to nullify contracts made in contravention of public policy only rarely,
with great caution and in cases that are free from doubt.

Id. at 268.

The COVID-19 pandemic, while devastating, does **not** justify a departure from the

clear and unambiguous terms of the policy in the name of "public policy." *See also, e.g.,* Johnson

v. Hartford Fin. Serv. Group, Inc., -- F. Supp. 3d --, 2021 WL 37573 at *7 (N.D. Ga. Jan. 4,

2021) ("[T]he Court is sympathetic to Plaintiffs' hardships and losses caused by COVID-19....

However, the Court is prohibited by Georgia law from so liberally construing an insurance

policy to provide coverage in instances where none was intended. Plaintiffs' factual allegations

simply do not fit within the plain, unambiguous language employed in the Policies as to trigger

coverage."); Boxed Foods Co. v. Cal. Capital Ins. Co., -- F. Supp. 3d --, 2020 WL 6271021 at

*1 (N.D. Cal. Oct. 26, 2020) ("[W]hile the Court sympathizes with Plaintiffs' circumstances,

the Court cannot ignore that the insurance policy excludes coverage for losses caused by

viruses, like COVID-19."). Indeed, several courts around the country have upheld a virus

exclusion as applicable to claims occasioned by the COVID-19 pandemic. *See generally, e.g.,*

Mauricio Martinez, DMD, P.A., v. Allied Ins. Co., -- F. Supp. 3d --, 2020 WL 5240218 (M.D.

Fla. Sept. 2, 2020) (denying motion for declaratory judgment that coverage was available for

losses due to COVID-19 closure orders under business income and/or civil authority

provisions "[b]ecause the insurance policy specifically excludes loss caused because of a

virus"); Boxed Foods at **3-5 (finding virus exclusion is not ambiguous and precludes coverage for property damage as well as business income and extra expense under the civil authority provision); *see also, e.g.,* Diesel Barbershop, LLC v. State Farm Lloyds, --F. Supp. 3d --, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020); Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co., --F. Supp. 3d --, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020); Seifert v. IMT Ins. Co., -- F. Supp. 3d --, 2020 WL 6120002 (D. Minn. Oct. 16, 2020); 1210 McGavock St. Hosp. Partners, LLC v. Admiral Indem. Co., 2020 WL 7641184 (M.D. Tenn. Dec. 23, 2020) (all denying coverage because the insureds did not establish direct physical loss or damage to property and noting, even if they did, the virus exclusion would bar the claims). [*See also* Order (Doc. 35) at n.3, W.D. Okla. case no. 20-cv-00511-R (noting "[o]f the 113 federal district courts to consider a motion to dismiss by an insurer with a virus endorsement in the policy, 108 granted the motion").] The exclusion likewise applies here because the COVID-19 pandemic would not have happened, and the closure orders would not have been issued, *but for* the corona**virus**.

## IV.  The "Loss of Market" exclusion in the policy precludes coverage for Govinda's claim.

In West Coast Hotel Management, LLC v. Berkshire Hathaway Guard Insurance Co., -- F. Supp. 3d --, 2020 WL 6440037 (C.D. Cal. Oct. 27, 2020), the court found that "[t]he spread of COVID-19 internationally affected travel and resulted in fewer reservations at Plaintiffs' hotels." Id. at *1. The same may be true for Govinda here. Indeed, Govinda's claim could be assessed identically to West Coast Hotel Management, with one important distinction—the Mayor of Fresno and the Governor of California deemed hotels were non-essential businesses subject to closure during the pandemic, whereas the Governor of

Oklahoma specifically declared hotels to be a "critical infrastructure sector" such that **Govinda did not close**. [Undisputed Facts Nos. 43-44.] Thus, Govinda's losses (if any) occurred only because people have chosen not to travel and gather in public as much during the pandemic. *See also, e.g.,* Uncork & Create LLC at *5 ("[T]he pandemic impacts human health and human behavior, not physical structures. Those changes in behavior, including changes required by governmental action, caused the Plaintiff economic losses.").

The express terms of the policy at issue state that Columbia "will not pay for loss or damage caused by or resulting from...[d]elay, loss of use or **loss of market**" and/or "any other consequential loss." [*See* Doc. 15-1 at p. 126 (emphasis added).] And, notably, the loss of market at issue here resulted from an **excluded** cause of loss, *i.e.,* the coronavirus. [*See* Doc. 15-1 at p. 101 ("Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.").] Other cases construing similar exclusions have defined a "loss of market" as a reduction in "the geographical or economic extent of commercial demand for [its] particular product" or a "change in consumer habits," Boyd Motors, Inc. v. Employers Ins. of Wausau, 880 F.2d 270, 273 (10th Cir. 1989), or as "losses resulting from economic changes occasioned by, *e.g.*, competition, shifts in demand, or the like," Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 279 F. Supp. 2d 235, 240 (S.D. N.Y. 2003). These exclusions do "not bar recovery for loss of ordinary business caused by a physical destruction or other covered peril." Id. at 240. Where, as here, there is no "physical destruction or other covered peril," however, the exclusion may apply to bar coverage.

For example, the policy at issue in Dictiomatic, Inc. v. U.S. Fidelity & Guaranty Co.,

958 F. Supp. 594 (S.D. Fla. 1997), provided similarly to Columbia's that the insurer would pay "the actual loss of 'business income' you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'" provided the suspension was "caused by direct physical loss of or damage to Covered Property" resulting "from any Covered Cause of Loss." *See* id. at 601. The policy also excluded coverage for "Consequential Loss," *i.e.,* "[d]elay, loss of use or loss of market." Id. Although Dictiomatic did sustain physical damage and mandated closures during Hurricane Andrew and its aftermath, Dictiomatic did not prove the hurricane was the sole cause of its losses. *See* id. at 603. The court therefore determined Dictiomatic was entitled to recover "only to the extent that it actually lost sales or business during the periods when the business premises and business property were not functioning" as a direct result of Hurricane Andrew, and all other losses were excluded by operation of the "Consequential Loss" exclusion. *See* id. at 603-4.

Here, Govinda's premises and property were never "not functioning." The hotel was not closed, its property was not rendered "unusable" and, in fact, suffered no physical loss or damage, and the peril underlying the closure orders (*i.e.,* the coronavirus) is not covered. Govinda's claim is therefore entirely subject to, and precluded by, the "loss of market" exclusion. *See also, e.g.,* Mudpie at *6 (finding a policy provision "that Travelers 'will not pay for loss or damage caused by or resulting from loss of use or loss of market'" suggested the "'direct physical loss of property' clause was not intended to encompass a loss where the property was rendered unusable without an intervening physical force" and otherwise "undermine[d] Mudpie's claim that 'a reasonable purchaser of insurance would read the policy as providing coverage for loss of functionality'")(internal alterations omitted); Elegant

Massage, LLC v. State Farm Mut. Auto. Ins. Co., -- F. Supp. 3d --, 2020 WL 7249624 at *14 (E.D. Va. Dec. 9, 2020) (finding plaintiff was "properly barred from coverage" under a "consequential loss" exclusion when it decided to voluntarily and temporarily close during the pandemic "as a result of waning business"); Whiskey River on Vintage, Inc. v. Ill. Cas. Co., -- F. Supp. 3d --, 2020 WL 7258575 at *18 (S.D. Iowa Nov. 30, 2020) (finding "[t]he Consequential Losses provision unambiguously states that Defendant will not pay for loss or damage resulting from a loss of use" but "[r]egardless, the Virus Exclusion would preclude coverage" where plaintiff/restaurant was limited to carry-out orders—but was not closed—during the pandemic).

### Conclusion

"COVID-19 harms people, not property." Uncork & Create LLC at *3. For this reason, and as demonstrated above, Govinda does not—and **cannot**—state a claim for "direct physical loss of or damage to property at" its premises as a result of the pandemic, so as to trigger "Business Income" and "Extra Expense" coverage. [*See* Doc. 15-1 at p. 99; *see also* id. at 101 ("Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.").]

Govinda also does not—and **cannot**—state a claim for any losses "caused by action of civil authority that prohibit[ed] access to" its premises as a result of any "damage" and/or "dangerous physical conditions" in the area where the hotel is located so as to trigger "Civil Authority" coverage [*see* Doc. 15-1 at p. 100], as the hotel was not closed, and access to the hotel was not prohibited, during the pandemic [Undisputed Facts Nos. 43-46]. Indeed, hotels were deemed part of the "critical infrastructure" in Oklahoma [Undisputed Facts No. 43], so

the only "damage" or "loss" Govinda experienced (if any) was loss of use, to the extent people chose not to use the hotel during the pandemic. By the express terms of the policy, however, Columbia "will not pay for loss or damage caused by or resulting from…loss of use or loss of market." [Doc. 15-1 at p. 126; *see also* id. at 101 ("Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.").]

Columbia also "will not pay for loss or damage caused by or resulting from any virus…that induces or is capable of inducing physical distress, illness or disease." [Doc. 15-1 at p. 82.] Yet, the "global COVID-19 pandemic disaster" is the only motivating force behind Govinda's claim [*see* Undisputed Facts No. 47], and COVID-19 is irrefutably the disease caused by the coronavirus [Undisputed Facts No. 48].

Although Govinda makes much of the fact that it purchased an "all-risk" property insurance policy, the policy does not cover "all losses." Govinda cannot carry its burden of proving that its losses fall within the coverage clause. Furthermore, Columbia has established that various exclusions can—and **do**—apply to take Govinda's claims out of coverage. Because Govinda's claims for business income loss, extra expense, interruption by civil authority, and extended business income interruption arising out of the COVID-19 pandemic are not covered under the policy, summary judgment should be entered in Columbia's favor as a matter of law.

29

Respectfully submitted,

MILLER JOHNSON JONES
ANTONISSE & WHITE, PLLC

By:    /s/ J. Logan Johnson
       Brad Miller, OBA #11437
       J. Logan Johnson, OBA #12722
       Jami Rhoades Antonisse, OBA #20612
       Grace Dawkins, OBA #32764
       500 NW 6th Street, Suite 300
       Oklahoma City, OK 73102-1219
       Telephone: (405) 896-4388
       Fax: (405) 609-2995
       bmiller@mjjaw.com
       ljohnson@mjjaw.com
       jantonisse@mjjaw.com
       gdawkins@mjjaw.com
       *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

On April 1, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Reggie N. Whitten, OBA #9576
Michael Burrage, OBA #1350
J. Revell Parrish, OBA #30205
J. Renley Dennis, OBA #33160
WHITTEN BURRAGE
512 North Broadway Avenue, Ste 300
Oklahoma City, OK 73102
Telephone: (405) 516-7800
Fax: (405) 516-7859
rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
rparrish@whittenburragelaw.com
jdennis@whittenburragelaw.com
*Attorneys for Plaintiff*

/s/ J. Logan Johnson
J. Logan Johnson

30