# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF OKLAHOMA

GOVINDA, LLC, d/b/a         )
HAMPTON INN MIDWEST CITY    )
                               )
          Plaintiff,        )
                               )
vs.                             )   Case No. CIV-20-542-R
                               )
COLUMBIA MUTUAL INSURANCE  )
GROUP,                       )
                               )
          Defendant.     )

## PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT
## ON THE ISSUE OF COVERAGE UNDER THE COLUMBIA POLICY

Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
J. Revell Parrish, OBA No. 30205
J. Renley Dennis, OBA No. 33160
WHITTEN BURRAGE
512 North Broadway Ave., Suite 300
Oklahoma City, OK 73102
Telephone:  (405) 516-7800
Facsimile:  (405) 516-7859
Emails:   rwhitten@whittenburragelaw.com
            mburrage@whittenburragelaw.com
            rparrish@whittenburragelaw.com
            jdennis@whittenburragelaw.com

***Attorneys for Plaintiff***

April 1, 2021

## <u>TABLE OF CONTENTS</u>

I.     **STATEMENT OF UNDISPUTED MATERIAL FACTS** ................................. 1

II.    **INTRODUCTION** ................................................................................................ 1

III.   **STANDARD OF REVIEW** .................................................................................. 2

IV.   **ARGUMENT AND AUTHORITIES** .................................................................. 3

     A.    **Under Oklahoma Law, Ambiguous Policy Language Is Interpreted In Favor Of The Insured** .................................................. 3

     B.    **Plaintiff Is Entitled To Business Income Coverage Under The Plain Language Of The Policy** .................................................................. 5

          1.    There Is No Dispute Plaintiff Necessarily Suspended Its Operations. ................................................................................. 5

          2.    There Is No Dispute Plaintiff Suffered A Loss Of Business Income Due To The Suspension Of Operations. ..................... 6

          3.    The Suspension Of Plaintiff's Operations Was Caused By Direct Physical Loss Of Or Damage To Property At The Insured Premises. ............................................................ 6

               a.    *The Losses Sustained Constitute "Physical Loss Of Or Damage To Property" Under The Plain Language Of The Policy.* ................................................. 8

               b.    *Recent Federal Judicial Opinions Involving Forced Closures Of Businesses In Response To Governmental Closure Orders Indicate That Such Orders Constitute "Physical Loss Of Or Damage To Property."* ............................ 12

          4.    It Is Undisputed That The Loss Or Damage Was Caused By A "Covered Cause Of Loss." ................................................. 16

     C.    **No Policy Exclusions Apply.** .................................................................. 16

          1.    The Plain Language Of The Virus Exclusion Does Not Apply To The Orders. ................................................................. 17

          2.    The "Loss Of Market Or Delay" Exclusion Does Not Apply. ................ 20

**V.    CONCLUSION** ...................................................................................................**21**

**CERTIFICATE OF SERVICE** ..................................................................................**21**

## TABLE OF AUTHORITIES

### *Cases*

*Alexis v. Southwood Ltd. P'ship*,
    792 So. 2d 100 (La. Ct. App. 2001) ........................................................... 19

*Am. Guar. & Liab. Ins. Co. v. Ingram Micro, Inc.*,
    No. 99-185 TUC ACM, 2000 WL 726789 (D. Ariz. April 18, 2000) ........ 15

*Diesel Barbershop, LLC v. State Farm Lloyds*,
    479 F. Supp. 3d 353 (W.D. Tex. 2020) ....................................................... 13

*Dodson v. St. Paul Ins. Co.*,
    812 P.2d 372 (Okla. 1991) ............................................................................ 3

*Doe v. Univ. of Denver*,
    952 F.3d 1182 (10th Cir. 2020) .................................................................... 2

*Elegant Massage, LLC*,
    No. 2:20-CV-265, 2020 WL 7249624 (E.D. Va. Dec. 9, 2020) ............ 7, 19

*Elm Ridge Expl. Co., LLC v. Engle*,
    721 F.3d 1199 (10th Cir. 2013) .................................................................... 3

*Evanston Ins. Co. v. Harbor Walk Dev., LLC*,
    814 F. Supp. 2d 635 (E.D. Va. 2011) .......................................................... 19

*First United Methodist Church of Stillwater, Inc. v. Philadelphia Indem. Ins.
    Co.*,
    423 P.3d 29 (Okla. Civ. App. 2016)............................................................. 4

*Golan Mgmt., LLC v. Hartford Ins. Co.*,
    No. CIV-11-0036-C, 2012 WL 1564738 (W.D. Okla. May 3, 2012)........... 3

*Harjo Gravel Co. v. Luke–Dick Co.*,
    153 P.2d 112 (Okla. 1944) ............................................................................ 3

*Henderson Road Rest. Sys, Inc. v. Zurich Am. Ins. Co.*,
    No. 1:20-CV-1239, 2021 WL 168422 (N.D. Ohio Jan. 19, 2021).............. 10

*In re: Society Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*,
    MDL No. 2964, 2021 WL 679109 (N.D. Ill. Feb. 22, 2021)............... 10, 11

*Kingkade v. Cont'l Cas. Co.*,
    128 P. 683 (Okla. 1912) ......................................................................... 9, 15

*Kirkes v. GuideOne Mut. Ins. Co.*,
     No. CIV-07-1345-C, 2009 WL 395254 (W.D. Okla. Feb. 17, 2009) .......... 3

*Max True Plastering Co. v. U.S. Fid. & Guar. Co.*,
     912 P.2d 861 (Okla. 1996) .................................................................. 3, 5, 18

*Meyer Natural Foods, LLC v. Liberty Mut. Fire Ins. Co.*,
     218 F. Supp. 3d 1034 (D. Neb. 2016) ........................................................ 17

*Mount Vernon Fire Ins. Co. v. Adamson*,
     2010 WL 3937336 (E.D. Va. Sept. 15, 2010) ............................................ 19

*Nautilus Grp., Inc. v. Allianz Global Risks US*,
     No. C11- 5281BHS, 2012 WL 760940 (W.D. Wash. Mar. 8, 2012) ...... 4, 13

*Oklahoma Attorneys Mut. Ins. Co. v. Cox*,
     440 P.3d 75 (Okla. Civ. App. 2019) ............................................................ 3

*Oklahoma Sch. Risk Mgmt. Tr. v. McAlester Pub. Sch.*,
     457 P.3d 997 (Okla. 2019) ................................................................. 3, 4, 18

*One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*,
     No. 11 C 2520, 2015 WL 2226202 (N.D. Ill. Apr. 22, 2015) .................... 15

*Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*,
     No. 1:15-CV-01932-CL, 2016 WL 3267247 (D. Or. June 7, 2016) ............ 7

*Poore v. Main Street Am. Assurance Co.*,
     355 F. Supp. 3d 506 (W.D. Va. 2018) ...................................................... 19

*Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*,
     No. CV-01-1362-ST, 2002 WL 31495830 (D. Or. Jun. 18, 2002) ............ 15

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*,
     488 F. Supp. 3d 690 (N.D. Ill. 2020), *reconsideration denied*, No. 20
     CV 2160, 2021 WL 83758 (N.D. Ill. Jan. 10, 2021) .................................. 13

*Studio 417, Inc. v. Cincinnati Ins. Co.*,
     478 F. Supp. 3d 794 (W.D. Mo. 2020) ........................................ 4, 7, 13, 14

*Trainor v. Apollo Metal Specialties, Inc.*,
     318 F.3d 976 (10th Cir. 2002) .................................................................... 2

*Turek Enters., Inc. v. State Farm Mut. Auto Ins. Co.*,
     484 F. Supp. 3d 492 (E.D. Mich. 2020) ............................................. 13, 14

*Urogynecology Specialist of Florida LLC v. Sentinel Ins. Co., Ltd.*,
489 F. Supp. 3d 1297 (M.D. Fla. 2020) ...................................................... 18

*W. Fire Ins. Co. v. First Presbyterian Church*,
165 Colo. 34, 437 P.2d 52 (1968) ................................................................ 21

*West Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*,
No. 2:20-cv-05663-VAP-DFMx, 2020 WL 6440037 (C.D. Cal. Oct.
27, 2020) ...................................................................................................... 4

*Western Fire Ins. Co. v. First Presbyterian Church*,
165 Colo. 34, 437 P.2d 52 (1968) ................................................................. 7

## *Rules*

Fed. R. Civ. P. 56 ................................................................................................ 1, 2

LCvR 56.1 ........................................................................................................... 1

Pursuant to Fed. R. Civ. P. 56 and LCvR 56.1, Plaintiff Govinda, LLC, d/b/a Hampton Inn Midwest City ("Plaintiff") moves this Court for summary judgment on the issue of coverage under Property Insurance Policy No. CMPOK0000030002 (the "Policy") issued by Defendant Columbia Mutual Insurance Group ("Defendant").

## I.   STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Defendant issued the Policy to Plaintiff for a term of November 8, 2019 to November 8, 2020, including business income coverage. *Ex. 1, Policy*.

2.     In March 2020, the COVID-19 Pandemic resulted in a slowdown of Plaintiff's business and closure of certain amenities. *Ex. 2, Governor Stitt's Executive Orders; Ex. 3, City of Midwest City Ordinance*.

## II.   INTRODUCTION

Plaintiff is a locally owned hotel providing many amenities beyond overnight stays such as event spaces, conference rooms, and dining. In March 2020, in response to the COVID-19 Pandemic, the Governor of Oklahoma issued executive orders (the "Executive Orders") that, among other things, caused a slowdown of bookings by forcing the cancellation of numerous events across the State of Oklahoma, prohibited gatherings of ten (10) or more people, and restricted Plaintiff's ability to offer its many services. Although Plaintiff implemented mitigation protocols and repairs to operate its business in a safe manner, Plaintiff suffered significant financial losses as a result of the Pandemic and the Executive Orders.

On May 19, 2020, Plaintiff submitted a claim to Defendant under the Policy for loss of business income caused by the Pandemic (the "Claim"). For years, Plaintiff faithfully

paid its premiums to Defendant in anticipation it would have business income coverage in the event it was forced to suspend its operations due to some fortuitous event, such as a pandemic and governmentally forced restrictions on gatherings and food service. However, Defendant failed to live up to its end of the bargain.

Because the plain language of the Policy provides coverage to Plaintiff for its financial losses caused by suspension of its operations in response to the Pandemic and Orders, the Court should **GRANT** Plaintiff's Motion for Summary Judgment and hold that Plaintiff is entitled to coverage under the Policy.

### III.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing there is no material issue in dispute. *Trainor v. Apollo Metal Specialties, Inc*., 318 F.3d 976, 979 (10th Cir. 2002). A fact is deemed material only if it might affect the outcome of the case under the governing substantive law. *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020). In reviewing a motion for summary judgment, the court must view the facts and any inferences reasonably drawn from them in a light most favorable to the nonmoving party. *Id.* Here, however, there are no facts that would prevent the Court from interpreting the Policy at issue as "interpretation of an insurance contract and whether it is ambiguous is a matter of law for the Court to determine and resolve accordingly." *Golan Mgmt., LLC v. Hartford Ins. Co*., No. CIV-11-0036-C,

2012 WL 1564738, at *2 (W.D. Okla. May 3, 2012) (citing *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991); *Harjo Gravel Co. v. Luke–Dick Co.*, 153 P.2d 112 (Okla. 1944)); *Kirkes v. GuideOne Mut. Ins. Co.*, No. CIV-07-1345-C, 2009 WL 395254, at *2 (W.D. Okla. Feb. 17, 2009) ("The question of whether policy language is ambiguous is a matter of law, and therefore appropriate for summary judgment determination."). With these standards in mind, it is only appropriate the Court **GRANT** summary judgment in Plaintiff's favor on the issue of coverage under the Policy.

## IV.   ARGUMENT AND AUTHORITIES

### A.   Under Oklahoma Law, Ambiguous Policy Language Is Interpreted In Favor Of The Insured.

A federal court sitting in diversity applies "the substantive law of the state where it is located." *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1210 (10th Cir. 2013). In Oklahoma, "[t]he interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law." *Oklahoma Sch. Risk Mgmt. Tr. v. McAlester Pub. Sch.*, 457 P.3d 997, 999 (Okla. 2019); *Oklahoma Attorneys Mut. Ins. Co. v. Cox*, 440 P.3d 75, 78 (Okla. Civ. App. 2019). When a term in an insurance policy is reasonably susceptible to more than one meaning, Oklahoma courts construe the term ***in favor of the insured and against the insurer***. *Oklahoma Sch. Risk Mgmt. Tr.*, 457 P.3d at 1005. Specifically, "in cases of doubt, words of inclusion are liberally applied in favor of the insured and words of exclusion are strictly construed against the insurer." *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 865 (Okla. 1996).

"[I]f an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctly reveals its stated purpose." *First United Methodist Church of Stillwater, Inc. v. Philadelphia Indem. Ins. Co.*, 423 P.3d 29, 40 (Okla. Civ. App. 2016). And while Oklahoma courts will uphold "clear and unambiguous" exclusions, "a lack of specificity in the language may make an exclusion ambiguous when applied to a particular event." *Oklahoma Sch. Risk Mgmt. Tr.*, 457 P.3d at 1005. Here, the policy language favors finding coverage for Plaintiff. *See generally, Ex. 4, Order and Opinion, Choctaw Nation of Oklahoma v. Lexington Ins. Co.,* CV-20-42, Bryan Cnty. Dist. Ct. Okla. (Feb. 15, 2021) (the "Choctaw Nation Order").

Here, the Court is asked to interpret the language "direct physical loss of or damage to" property. Various court rulings on similar policy language show there is likely more than one reasonable interpretation to the language at issue here. For instance, in *Nautilus Grp., Inc. v. Allianz Global Risks US*, No. C11- 5281BHS, 2012 WL 760940, at *7 (W.D. Wash. Mar. 8, 2012), the court held that direct physical loss must mean something different from damage, while the court in *West Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, No. 2:20-cv-05663-VAP-DFMx, 2020 WL 6440037 (C.D. Cal. Oct. 27, 2020), held the same language required "that loss or damage be physical in nature…." Another case has held that the restricted access and use of the property is a physical loss—a term distinguishable and not synonymous with physical damage. *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794, 803 (W.D. Mo. 2020). Different courts have held different opinions, and because there are two contrary and reasonable interpretations of the language, as such, the provision should be found

ambiguous. Defendant could have added language to restrict coverage to "tangible, structural damage," but it did not. Therefore, any ambiguity in the policy language must be construed against them. *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d at 865.

**B.      Plaintiff Is Entitled To Business Income Coverage Under The Plain Language Of The Policy.**

Application of the Policy's plain language to the facts presented here demonstrates Plaintiff is entitled to Business Income Coverage under the Policy as a matter of law. The Policy provides, in pertinent part:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Ex. 1, Policy at 102*. Thus, to be entitled to coverage, Plaintiff must show: (1) it necessarily suspended their operations; (2) it suffered a loss of business income due to the suspension of its operations; and (3) the suspension was caused by direct physical loss of or damage to property at a premise. Because the undisputed facts of this case satisfy all three of these elements, Plaintiff is entitled to Business Income Coverage under the Policy as a matter of law.

**1.      There Is No Dispute Plaintiff Necessarily Suspended Its Operations.**

It is undisputed that there was a "suspension" of Plaintiff's "operations." The Policy defines "suspension" as "[t]he slowdown or cessation of your business activities." *Ex. 1, Policy at 110*. In turn, the Policy defines "operations" as "[y]our business activities

occurring at the described premises." *Id.* There is no dispute Plaintiff suffered a slowdown of business activities and ceased providing various business amenities and services.

**2.      There Is No Dispute Plaintiff Suffered A Loss Of Business Income Due To The Suspension Of Operations.**

The Policy defines "business income" as "Net Income (Net Profit or Loss before income taxes)" and "[c]ontinuing normal operating expenses incurred, including payroll." *Ex. 1, Policy at 102*. Upon the issuance of the Executive Orders, Plaintiff immediately suffered a loss, as they could no longer host gatherings of larger than ten (10) people and all lodging business was essentially restricted. During that time, however, Plaintiff also had continuing payroll and rental payment obligations. *Id.* Accordingly, under the Policy's plain language, Plaintiff suffered a loss of "business income" as a result of the necessary suspension of its operations. *Id.*

**3.      The Suspension Of Plaintiff's Operations Was Caused By Direct Physical Loss Of Or Damage To Property At The Insured Premises.**

The Policy does not define the words "physical," "loss," "damage," or "property." However, Webster's Dictionary defines "physical" as "of or relating to material things." *https://www.merriamwebster.com/dictionary/physical.* It defines "loss" as "detriment, disadvantage or deprivation from failure to keep, have or get; something that is lost . . . the state of being deprived of or being without something one has had." *https://www.merriam-webster.com/dictionary/loss.* It defines "damage" as "injury or harm that reduces value or usefulness." *https://www.merriam-webster.com/dictionary/damage.* It defines "property" as including intangible property, "something owned or possessed," "***the exclusive right to possess, enjoy, and dispose of a thing: OWNERSHIP***," and "something to which a person

or business has a legal title." *https://www.merriam-webster.com/dictionary/property* (emphasis added).

Judge Campbell and Judge Kirkley in Bryan and Cherokee Counties, respectively, agree with Webster's that a direct physical loss occurs when property is no longer rendered usable:

> First, the Nation cites to several cases where *direct physical loss* has been interpreted to include property rendered unusable for its intended purpose. *E.g., Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 437 P.2d 52 (1968); *Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co*., No. 1:15-CV-01932-CL, 2016 WL 3267247, at *7-9 (D. Or. June 7, 2016); *see also* the Nation's Motion at fn. 11. This includes several cases evaluating closures due to the Pandemic. *Harrison v. Optical Services, USA et al*., BER-L-3681-20, at 27 (Bergen Cnty. N.J. Aug. 13, 2020); *Studio 417, Inc. v. Cincinnati Ins. Co*., No. 20-CV-03127-SRB, 2020 WL 4692385, at *5 (W.D. Mo. Aug. 12, 2020); *Elegant Massage, LLC*, No. 2:20-CV-265, 2020 WL 7249624, at *8 (E.D. Va. Dec. 9, 2020). Defendant Insurers characterize the Nation's argument as "the proposition that loss of use is sufficient to establish ... business interruption, without physical impairment of the property." But this argument appears to be misplaced, as the Nation's interpretation accounts for physical impairment through the closure itself, as another court observed . . . the ordinary meaning of the phrase 'direct physical loss' includes the inability to utilize or possess something in the real, material, or bodily world, resulting from a given cause without the intervention of other conditions. *E.g., North State Deli, LLC, et al. v. Cincinnati Insurance Co., et al.,* 20-CVS-02569 (Durham Cnty., N.C. Oct. 9, 2020) (emphasis added) (Granting plaintiff-insured summary judgment for business interruption coverage due to the COVID Pandemic).

*Ex. 4*, *Choctaw Nation Order at p. 6*; *see also Ex. 5, Order and Opinion, Cherokee Nation v. Lexington Ins. Co.,* CV-20-150, Cherokee Cnty. Dist. Ct. Okla. (Jan. 29, 2021) (the "Cherokee Nation Order").

Thus, when Plaintiff could not utilize all of its rooms and was forced to close various amenities and cease certain services due to the Pandemic, it suffered direct physical loss as it has been defined by Oklahoma courts applying Oklahoma law.

  *a.*  ***The Losses Sustained Constitute "Physical Loss Of Or Damage To Property" Under The Plain Language Of The Policy.***

There is no question Plaintiff suffered "physical loss of or damage to property" under the Policy. Plaintiff's losses to property were both tangible and intangible. It is undisputed Plaintiff cannot operate its hotel in a manner that would endanger the life or well-being of its guests. Consequently, the inability to operate at full capacity was the slowdown and cessation of operations contemplated by the Policy, thus triggering business interruption coverage. As a result of the Pandemic and Executive Orders, Plaintiff suffered a "physical loss of . . . property," as the Pandemic and Executive Orders "deprived" Plaintiff of its ability to use the Insured Premises for their intended purpose. Plaintiff was prevented from providing dine-in and event services, and the restriction on gatherings of ten (10) or more preempted many large bookings.

Alternatively, because the Policy requires ***either*** a physical loss of ***or*** damage to property, Plaintiff suffered "damage to property" based on the plain, dictionary definitions of those terms. For example, by preventing travel, the Pandemic and Executive Orders caused Plaintiff "injury or harm that reduced value or usefulness" of their property — *i.e.*, their "exclusive rights to possess, enjoy, and dispose of" the Insured Premises in the

manner they saw fit.[1] Likewise, the Pandemic and Executive Orders caused "injury or harm that reduced value or usefulness" of Plaintiff's "legal title" to the Insured Premises, as the Pandemic and Executive Orders placed new restrictions on Plaintiff's intended use of its Insured Premises. Accordingly, based on a plain reading of the Policy language alone, the Pandemic and Executive Orders constitute "physical loss of or damage to property" under the Policy.

Defendant would have this Court believe the term "direct physical loss" has the same meaning as "physical damage." This interpretation would render direct physical loss meaningless and is contrary to Oklahoma law. *See Kingkade v. Cont'l Cas. Co*., 128 P. 683, 685 (Okla. 1912); *Ex. 4, Choctaw Nation Order at p. 8*. Moreover, an examination of the Policy itself shows the meaning of direct physical loss must be different from physical damage. For instance, the Policy excludes coverage for "[t]he enforcement of or compliance with any ordinance or law… regulating the … use … of any property." *Ex. 1, Policy at 124*. The Policy goes on to say "[t]his exclusion, Ordinance or Law, applies whether the loss results from … an ordinance or law that is enforced even if the property has not been damaged…." *Id*. The Policy excludes coverage for dishonest acts. *Id.* at 127. Another example of excluded losses are losses due to "[s]uspension lapse or cancellation of any license, lease or contract." *Id*. These are just a few examples of exclusions in the Policy that do not require damage to the property. If these exclusions are necessary, then direct physical loss must mean something other than direct physical damage.

---

[1] Defendant will likely argue that damage to tangible property is required, but the Policy does not limit the definition of "property" to only tangible property.

Recently, Judge Polster of the Northern District of Ohio granted summary judgment in favor of plaintiff insureds concerning business interruption coverage due to the COVID-19 Pandemic. *Henderson Road Rest. Sys, Inc. v. Zurich Am. Ins. Co.*, No. 1:20-CV-1239, 2021 WL 168422, at *5 (N.D. Ohio Jan. 19, 2021) (attached hereto as Exhibit 6). There, Zurich argued that "direct physical loss" required the property to be damaged so that the property exhibits "physical alteration or structural damage." *Id.* However, "Zurich's Policy d[id] not state that 'direct physical loss of or damage to property' required 'physical alteration or structural damage to any property at the Insured Premises.'" *Id.* The court acknowledged the validity of the plaintiffs' argument "that physical loss of the real property means something different than damage to the real property…" *Id.* at *10. "Otherwise, why would both phrases appear side-by-side separated by the disjunctive conjunction 'or'? Plaintiffs argue that they lost their real property when the state governments ordered that the properties could no longer be used for their intended purposes–as dine-in restaurants. The [p]olicy's language *is* susceptible to this interpretation." *Id.* The same arguments apply to Plaintiff's Policy, and the same result should be reached.

Further, the Northern District of Illinois held that reasonable people could determine the Pandemic was a "direct physical loss." *In re: Society Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2964, 2021 WL 679109, at *1 (N.D. Ill. Feb. 22, 2021) (attached hereto as Exhibit 7). More specifically, although the restaurants at issue were still operating at all relevant times, the court noted they had to limit their

offered amenities, the result of which was a direct physical loss. *Id.* at *8-9. The court

explained:

> According to Society, these losses are not "physical" because tables and
> chairs, walls and floors, stovetops and sinks remain in good working order;
> indeed, the Plaintiffs have been able to use the premises to conduct some
> amount of business. R. 113, 20 C 2005, Society's Mot. at 9–10. But a
> reasonable jury can find that the Plaintiffs did suffer a direct "physical" loss
> of property on their premises. First, viewed in the light most favorable to the
> Plaintiffs, the pandemic-caused shutdown orders do impose a physical limit:
> the restaurants are limited from using much of their physical space. It is not
> as if the shutdown orders imposed a financial limit on the restaurants by, for
> example, capping the dollar-amount of daily sales that each restaurant could
> make. No, instead the Plaintiffs cannot use (or cannot fully use) the physical
> space. Indeed, the policy defines "covered property" to include buildings at
> the premises, not just personal property or movable items. Businessowners
> Special Property Coverage Form, A.1. Another way to understand the
> physical nature of the loss inflicted by the shutdown orders is to consider
> how a restaurant might mitigate against the suspension of operations caused
> by, say, a 25%-capacity limitation on the number of guests inside the
> restaurant. If the restaurant could expand its physical space, then the
> restaurant could serve more guests and the loss would be mitigated (at least
> in part). The loss is physical—or at the very least, a reasonable jury can make
> that finding.

*Id.* at *9. Plaintiff, like the restaurants above, has asserted it could not offer all of its

business amenities due to the Pandemic and Executive Orders. There is no distinction

between the limitations of the restaurants and the Plaintiff's inability to offer its full range

of services.

Notably, the *Society* court also reviewed the same "period of restoration" provision

as found within Defendant's Policy. There the insurer argued that because the "period of

restoration" ends only when the property is repaired, rebuilt, or replaced, direct physical

loss must be a structural change. But the court rejected that argument:

First and foremost, the "Period of Restoration" describes a time period during which loss of business income will be covered, rather than an explicit definition of coverage. Instead, the explicit definition of coverage is that direct physical "loss of" property is covered—not just "damage to" property, as explained earlier. Second, the limit on the Period of Restoration does include the words "repaired" and "replaced," that is, the restoration period ends when the property at the premises is "repaired" or "replaced." There is nothing inherent in the meanings of those words that would be inconsistent with characterizing the Plaintiffs' loss of their space due to the shutdown orders as a physical loss. If, for example, the coronavirus risk could be minimized by the installation of partitions and a particular ventilation system, then the restaurants would be expected to "repair" the space by installing those safety features. As another example, if a restaurant could mitigate the loss caused by a percentage-capacity limit by "replacing" some of its dining-room space by opening its adjacent banquet-hall room to increase the number of guests it could serve, then the restaurant would be expected to "replace" the loss of space by doing so. So the definition of the Period of Restoration is consistent with interpreting direct physical loss of property to include the loss of physical use of the covered property imposed by the shutdown orders.

*Id.* Taking these authorities together, the restriction of Plaintiff's business due to the Pandemic and Executive Orders constitutes direct physical loss under the policy.

> **b.    *Recent Federal Judicial Opinions Involving Forced Closures Of Businesses In Response To Governmental Closure Orders Indicate That Such Orders Constitute "Physical Loss Of Or Damage To Property."***

To Plaintiff's knowledge, this is the first COVID-19 related business interruption case in the country that is being determined at the summary judgment stage by a federal court, with a full evidentiary record. Plaintiff acknowledges some courts examining the issue have found no business interruption coverage is available. However, as discussed below, many of those cases are distinguishable for multiple reasons including, without limitation, the policy language at issue being much more limiting than that of Defendant's Policy. *See, e.g., Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353

(W.D. Tex. 2020) (policy covered only "accidental direct physical loss to" covered property); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690 (N.D. Ill. 2020), *reconsideration denied*, No. 20 CV 2160, 2021 WL 83758 (N.D. Ill. Jan. 10, 2021) ("policy covered only "direct physical 'loss' to property" unlike here where coverage is afforded to "direct physical loss of ***or*** damage to" property); *Turek Enters., Inc. v. State Farm Mut. Auto Ins. Co.*, 484 F. Supp. 3d 492 (E.D. Mich. 2020) (policy covered only "accidental direct physical loss to property"). This case presents novel issues due to its procedural posture and much more expansive policy language.

Notably, in analogous litigation involving business interruption insurance claims due to governmental closure orders that also involves similar policy language ("accidental physical loss or accidental physical damage" to property), the United States District Court for the Western District of Missouri held that the relevant governmental closure orders caused a "physical loss" because "the Closure Orders prohibited or significantly restricted access to Plaintiffs' premises." *Studio 417, Inc.*, 48 F. Supp. 3d at 803. In reaching its decision, the *Studio 417* court explained the policies provide coverage for "'accidental physical loss ***or*** accidental physical damage.'" *Id.* at 800-01 (emphasis in original). The court further explained that "[d]efendant conflates 'loss' and 'damage' in support of its argument that the Policies require a tangible, physical alteration. *Id*. However, the court was required to must give meaning to both terms. *See also Nautilus Grp., Inc.,* at *7 (stating that 'if "physical loss" was interpreted to mean "damage," then one or the other would be superfluous); *Sandy Point Dental*, 488 F. Supp. 3d at 694, n.2, (explaining that the

13

*Studio 417* court "rested its decision on that policy's expansive language, language very different from the policy in the instant case").

Likewise, the United States District Court for the Eastern District of Michigan recently opined in *Turek* on the importance of the "physical loss **of or** damage to" policy language present here, as opposed to other, more limiting, policy language. Specifically, the *Turek* court rejected the plaintiff's claim for business income coverage due to its closure in response to the Michigan Orders, construing the policy to require "tangible damage" to trigger coverage. *Turek*, 484 F. Supp. 3d at 500. However, the relevant policy language in *Turek* provided coverage only for "accidental direct physical loss to Covered Property." *Id.* at 495. And as the *Turek* court explained, "[t]he term here is 'direct physical loss,' not 'direct physical loss **or** damage.' Consequently, reading 'direct physical loss' to require tangible damage does not risk redundantly interpreting 'loss' and 'damage.'" *Id.* at 500 (emphasis in original). Moreover, the *Turek* court went on to further explain:

> Plaintiff suggests that "physical loss to Covered Property" includes the inability to use Covered Property. This interpretation seems consistent with one definition of "loss" but ultimately renders the word "to" meaningless. "To" is used here as a preposition indicating contact between two nouns, "direct physical loss" and "Covered Property." Accordingly, the plain meaning of "direct physical loss to Covered Property" requires that there be a loss **to** Covered Property; and not just any loss, a ***direct physical loss***. Plaintiff's interpretation would be plausible if, instead, the term at issue were "accidental direct physical loss **of** Covered Property."

*Id.* at 500-01 (italics in original) (internal citations omitted). Accordingly, as explained in *Studio 417* and *Turek*, the "direct physical loss **of or** damage to property" Policy language at issue here cannot be construed to require "tangible damage" to the Insured Premises

14

because to do so would improperly conflate "loss" with "damage," when either is sufficient to trigger coverage under the Policy.

Numerous courts throughout the country have similarly held that "tangible damage" such as structural alteration is ***not*** required to trigger coverage under insurance policies containing "physical loss of ***or*** damage to" property language. *See, e.g., One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11 C 2520, 2015 WL 2226202, at *9 (N.D. Ill. Apr. 22, 2015) ("where a general all-risk commercial or homeowner's policy insures against both 'loss' and 'damage' to an existing structure, 'physical' damage may take the form of loss of use of otherwise undamaged property, which in turn suffices as a covered loss"); *Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*, No. CV-01-1362-ST, 2002 WL 31495830, at *9 (D. Or. Jun. 18, 2002) ("the inability to inhabit a building [is] a 'direct, physical loss' covered by insurance"); *Am. Guar. & Liab. Ins. Co. v. Ingram Micro, Inc.*, No. 99-185 TUC ACM, 2000 WL 726789, at *2 (D. Ariz. April 18, 2000) (holding that "'physical damage' is not restricted to the physical destruction or harm of computer circuity but includes loss of access, loss of use, and loss of functionality".) This reading is the only one consistent with Oklahoma law, as every word in an insurance contract must be given meaning. *Ex. 4, Choctaw Nation Order at p. 8* (quoting *Kingkade v. Cont'l Cas. Co.*, 128 P. at 685 ("The rule of construction is that some particular operation, effect, and meaning must be assigned to each sentence, phrase, and word used, and when this may fairly and properly be done, no part of the language used can be rejected as superfluous or unmeaning.")). Moreover, because the Policy provides coverage for "direct physical loss ***of*** . . . property" as opposed to "direct physical loss ***to*** property," the Insured Premises

themselves do not need to have suffered a direct physical loss. Rather, all that is required to trigger coverage is that **_Plaintiff_** incur a direct physical loss **_of_** property at the Insured Premises. Plaintiff has been deprived (i.e., a "loss") **_of_** their rights of enjoyment of the Insured Premises (i.e., "property") because they were prohibited from using the Insured Premises for their intended purpose.

### 4. It Is Undisputed That The Loss Or Damage Was Caused By A "Covered Cause Of Loss."

Finally, the Policy requires that "[t]he loss or damage must be caused by or result from a Covered Cause of Loss." The Policy defines "Covered Cause of Loss", in pertinent part, as "direct physical loss unless the loss is excluded or limited in this policy." It is undisputed that the Pandemic occurred, and the Executive Orders were issued during "this policy period." Moreover, it cannot legitimately be disputed that the Pandemic and Executive Orders were "fortuitous causes or events," as no one could have anticipated the breadth and impact of the Pandemic and Executive Orders. As a result, the Pandemic and the Executive Orders plainly constitute a "covered cause of loss" so long as they are not otherwise excluded by the Policy. As explained more fully below in Section C, the Pandemic and Executive Orders are not an excluded cause of loss under the Policy. Accordingly, the Court should **GRANT** summary judgment in favor of Plaintiffs on the issue of coverage under the Policy for their Claim.

### C. No Policy Exclusions Apply.

Plaintiff anticipates Defendant will argue the Policy's so-called "Virus or Bacteria" exclusion should exclude coverage under the Policy. This argument is without merit.

### 1.    The Plain Language Of The Virus Exclusion Does Not Apply To The Orders.

Prior to COVID, carriers were aware of the pandemic perils and often used clear and express language excluded that risk from property policies. For example, since at least 2016, Liberty Mutual Fire Insurance Company has utilized an exclusion similar to the virus exclusion here, but the Liberty Mutual exclusion applied to "suspected presence or threat of any virus" and specifically excluded "pandemic." *Ex. 4, Choctaw Nation Order at p. 11* (quoting *Meyer Natural Foods, LLC v. Liberty Mut. Fire Ins. Co.*, 218 F. Supp. 3d 1034, 1038 (D. Neb. 2016)). Indeed, it is the industry standard practice for carriers to utilize language to clearly and distinctly expand virus exclusions to cover pandemics and/or the threat, fear, or suspicion of a virus. *Ex. 4, Choctaw Nation Order, pp. 11-14.*

The virus or bacteria exclusion here applies to "any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *Ex. 1*, *Policy at 82*. The claim made by Plaintiff was for losses due to the Pandemic and Executive Orders, not a virus, bacterium or other microorganism. In fact, Plaintiff has not alleged the presence of any virus, bacterium or other microorganism that has cause or could cause physical distress, illness or disease. To that point, Judge Campbell found that the same exclusion before the Court would not apply absent "proof of actual viral presence." *Ex. 4, Choctaw Nation Order at pp. 13-14* ("Defendant Liberty Mutual's Excess Policy exclusion requires the virus is 'capable of inducing physical distress, illness or disease,' but to be capable of inducing such an effect the virus would need to be on the premises.").

Defendant nonetheless will likely ask the Court to utilize a jumble of broad exclusions to deny Plaintiff's claim. But the Oklahoma Supreme Court has recently rejected the application of broad exclusions to particular events under all-risk policies. *Compare Oklahoma Sch. Risk Mgmt. Tr. v. McAlester Pub. Sch.,* 457 P.3d at 1005 ("[A] lack of specificity in the language may make an exclusion ambiguous when applied to a particular event.") *with Max True Plastering Co. v. U.S. Fid. & Guar. Co*., 912 P.2d at 865 ("[A]mbiguities are construed most strongly against the insurer."). Moreover, numerous courts have recently refused to apply generic virus exclusions, similar to the one here, to the Pandemic.

As previously stated, different courts have found different meanings to the same or similar language. The only Oklahoma state court rulings addressing business interruption coverage due to the Pandemic have come down on opposite sides of the issue-one holding physical loss and physical damage are different and one holding they are synonymous terms. *Ex. 4, Choctaw Nation Order; see also Ex. 5, Cherokee Nation Order.* Even if Defendant presents a reasonable interpretation, the fact that Plaintiff's arguments have been adopted by various courts proves its interpretation is also reasonable, making the policy ambiguous in favor of Plaintiff. *Max True Plastering Co.*, 912 P.2d at 865.

The District Court for the Middle District of Florida recently held: "The virus exclusion states that Sentinel will not pay for loss or damage caused directly or indirectly by the presence, growth, proliferation, spread, or any activity of 'fungi, wet rot, dry rot, bacteria or virus." *Urogynecology Specialist of Florida LLC v. Sentinel Ins. Co., Ltd*., 489 F. Supp. 3d 1297 (M.D. Fla. 2020) (attached hereto as Exhibit 8). "Denying coverage

for losses stemming from COVID-19, however, does not logically align with the grouping of the virus exclusion with other pollutants such that the [p]olicy necessarily anticipated and intended to deny coverage for these kinds of business losses. . . ." *Id.* This is the same result reached by the Eastern District of Virginia:

> Accordingly, the Court finds that the Virus Exclusion particularly deals with the "[g]rowth, proliferation, spread or presence" of "virus, bacteria or other microorganism." . . . This supports the interpretation that the Virus Exclusion applies where a virus has spread throughout the property. Other state and federal courts have interpreted similar virus, bacteria, and fungi exclusions in the same the way. *See, e.g., Mount Vernon Fire Ins. Co. v. Adamson*, 2010 WL 3937336, at *4 (E.D. Va. Sept. 15, 2010) (exclusions barring coverage for mold exposure barred claims for mold exposure); *Poore v. Main Street Am. Assurance Co*., 355 F. Supp. 3d 506, 512 (W.D. Va. 2018) (finding mold exclusion barred coverage from losses stemming from mold in the insured's property); *Alexis v. Southwood Ltd. P'ship*, 792 So. 2d 100, 104 (La. Ct. App. 2001) (communicable disease exclusion barred coverage from illness after exposure to raw sewage); *Evanston Ins. Co. v. Harbor Walk Dev., LLC*, 814 F. Supp. 2d 635, 652 (E.D. Va. 2011) (finding pollution exclusion which barred claims stemming from bodily injury or property damaged caused by pollutants barred claims stemming from bodily injury or property damage caused by pollutants). Therefore, in applying the Virus Exclusion there must be a direct connection between the exclusion and the claimed loss and not, as the Defendants argue, a tenuous connection anywhere in the chain of causation. That is, although the Virus Exclusion does require that the virus be the cause of the policyholder's loss, the connection must be the immediate cause in the chain. Here, Plaintiff is neither alleging that there is a presence of a virus at the covered property nor that a virus is the direct cause of the property's physical loss. Also, Plaintiff does not allege that the Executive Orders the Commonwealth of Virginia issued were as a result of "growth, proliferation, spread or presence" of virus contamination at the Plaintiff's property. . . . Therefore, Defendants have failed to meet its burden to show that the Virus Exclusion applies to Plaintiff's claim.

*Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co*., No. 2:20-CV-265, 2020 WL 7249624, at *12-13 (E.D. Va. Dec. 9, 2020) (attached hereto as Exhibit 9).

When all-risk carriers fail to adopt a specific exclusion that is known and exists within the market, **"*they acted at their own peril.*"** *Id.* at 1001 (emphasis added). Defendant, like all property carriers, is well aware of the pandemic peril, [2] knew how to craft clear and express language to exclude this Pandemic, but failed to include an applicable exclusion. The Court should not take extra effort to expand an (ambiguous, at best) exclusion to the benefit of the carrier.

### 2.    The "Loss Of Market Or Delay" Exclusion Does Not Apply.

Defendant may also attempt to argue the Policy's "Loss of Market or Delay" exclusion excludes coverage for Plaintiffs' claimed losses. The "Loss of Market or Delay" exclusion provides:

> We will not pay for loss or damage caused by or resulting from loss of market, loss of use, or delay. This exclusion applies even if one of these excluded causes of loss was caused by or resulted from "mistake" or "malfunction."

Applying this exclusion to bar Business Income coverage for "loss of use," when that is the entire purpose of Business Income coverage in the first place, is nonsensical and would render the coverage illusory. As Judge Campbell of Bryan County, Oklahoma stated:

> Finally, Defendant Liberty Mutual asserts its loss-of-use exclusion with its excess policy bars coverage. But by the plain terms of the TPIP Policy, Defendant Liberty Mutual cannot assert that all forms of loss of use are excluded. As the Nation has shown, business interruption coverage as contemplated by the TPIP Policy necessary only results from some loss of use-i.e., from some interruption of business. The Nation's Reply to Defendant Liberty Mutual Fire Insurance Company's Supplemental Opposition to the

---

[2] For example, Lloyd's published *Pandemic: Potential Insurance Impacts* in 2008, which stated: "A pandemic is inevitable. There have been a series of pandemics in history, since the 1600s these have had an average recurrence rate of 30-50 years." *Ex. 10* at 6. With regard to business interruption coverage specifically, the report warns that "***[c]ontract certainty may be a useful defence here.***" *Id.* at 21.

Nation's Motion at 5-6. Thus, if all loss of use was excluded, the business interruption coverage would be illusory. Id. For that reason, the Court accepts the proposition that when a dangerous condition like a fire, tornado, or the Pandemic causes loss of use, the exclusion would not apply. *W. Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 38-39.

*Ex. 4*, *Choctaw Nation Order, at p. 14*.

## V.     <u>CONCLUSION</u>

Based on the foregoing, summary judgment should be **GRANTED** to Plaintiff on the issue of coverage under the Policy.

Respectfully submitted,

 */s/ J. Renley Dennis*
Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
J. Revell Parrish, OBA No. 30205
J. Renley Dennis, OBA No. 33160
WHITTEN BURRAGE
512 North Broadway Ave., Suite 300
Oklahoma City, OK 73102
Telephone:   (405) 516-7800
Facsimile:   (405) 516-7859
Emails:   rwhitten@whittenburragelaw.com
      mburrage@whittenburragelaw.com
      rparrish@whittenburragelaw.com
      jdennis@whittenburragelaw.com

***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1, 2021, I filed the attached document with the Clerk of Court. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

 */s/ J. Renley Dennis*
J. Renley Dennis