# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GOVINDA, LLC, d/b/a<br>HAMPTON INN MIDWEST CITY, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | No. CIV-20-542-R |
| COLUMBIA MUTUAL INSURANCE<br>COMPANY, | )<br>)<br>)<br>) | |
| Defendant. | ) | |

## **ORDER**

Before the Court are cross-motions for summary judgment filed by the parties. (Doc. Nos. 40 and 41). Each party responded to the motion filed by the opposition and filed a reply in support of its position. (Doc. Nos. 44, 45, 46 and 47). Upon consideration of the parties' submissions, the Court finds as follows.

Summary judgment is appropriate if the moving party demonstrates there is "no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Callahan v. Unified Gov't of Wyandotte County*, 806 F.3d 1022, 1027 (10th Cir. 2015). The analysis is the same in an insurance case. Interpreting insurance policies and determining policy rights and obligations "are questions of law, appropriate grist for the summary judgment mill." *Merchants Ins. Co. U.S. Fidelity & Guar. Co.*, 143 F.3d 5, 8 (1st Cir. 1998); Winters v. Charter Oak Fire Ins. Co., 4 F.Supp.2d 1288, 1291 (D.N.M. 1998) (construction of an insurance policy is a matter of law that can be decided through summary judgment). When facts are undisputed, and the only issue is the

application of an insurance policy, all that remains is a question of law for the court. *See Benns v. Continental Cas.*, Co., 982 F.2d 461, 462 (10th Cir. 1993).

Here, the parties have filed cross-motions for summary judgment, but this does not change the standard of review. *Burrows v. Cherokee County Sheriff's Officers*, No. CIV-A 00-3333-GTV, 2005 WL 1185620 (D. Kan. May 18, 2005) (unpublished opinion) (citing Taft Broadcasting Co. v. U.S., 929 F.2d 240, 249 (6th Cir. 1991)). Furthermore, cross-motions for summary judgment are treated separately; "the denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). Accordingly, the Court will consider each motion in turn, although the outcome of one motion in this case dictates the outcome of the other.

### Plaintiff's Motion for Summary Judgment

Plaintiff, which owns and operates a hotel, filed this declaratory judgment action seeking a determination of whether Policy No. CMPOK0000030002 ("the Policy"), issued to it by Defendant and covering the period from November 8, 2019 to November 8, 2020, covers certain losses, specifically "losses and expenses related to of (sic) the slowdown of its business activities as a result of the COVID-19 pandemic disaster and state and local executive orders.[1] Plaintiff seeks a ruling Defendant is responsible for said losses and expenses in an amount to be determined." (Amended Complaint, Doc. No. 15, ¶ 21). Via its motion for summary judgment Plaintiff asks the Court to conclude as a matter of law

---

[1] Plaintiff does not contend that it was forced to shutter its doors or abandon the hotel property as a result of COVID-19. Rather, Plaintiff admits that a March 25, 2020 Amended Executive Memorandum 2020-21 issued by Oklahoma Governor Kevin Stitt declared hotels to be "critical infrastructure." (Doc. No. 40-3, p. 5). Plaintiff contends, however, that as a result of the executive order and corresponding city mandates its business income was substantially reduced.

that it is entitled to coverage based on two allegedly undisputed facts: (1) that Defendant issued a Policy to Plaintiff covering the above stated period which included business income coverage, and (2) in March 2020, the COVID-19 Pandemic resulted in a slowdown of Plaintiff's business and closure of certain amenities.[2] (Doc. No. 41, p, 7). Plaintiff did not allege and does not argue that the COVID-19 virus physically attached itself to Plaintiff's property.

In this diversity action, Oklahoma substantive law governs the Court's analysis. *See Eden v. Neth. Ins. Co.*, 834 F.3d 1116, 1120 (10th Cir. 2016).[3] "In Oklahoma, unambiguous insurance contracts are construed, as are other contracts, according to their terms." *See Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 869 (Okla. 1996). "The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law." *Id.* Terms not defined in the policy are accorded their ordinary, plain meaning. *Bituminous Cas. Corp. v. Cowen Const., Inc.*, 55 P.3d 1030, 1033 (Okla. 2002) (*citing Phillips v. Estate of Greenfield*, 859 P.2d 1101, 1104 (Okla. 1993)).

> Insurance contracts are ambiguous only if they are susceptible to two constructions. In interpreting an insurance contract, this Court will not make a better contract by altering a term for a party's benefit. We do not indulge in forced or constrained interpretations to create and then to construe ambiguities in insurance contracts.

---

[2] Plaintiff's Motion for Summary Judgment sets forth only two allegedly undisputed facts, that Defendant issued the policy and that "[i]n March 2020 the COVID-19 Pandemic resulted in a slowdown of Plaintiff's business and closure of certain amenities." In support of this second fact Plaintiff cites to the Executive Order of the Governor of Oklahoma (Doc. No. 41-2) and Ordinance No. 3406 of the City of Midwest City passed and approved on March 24, 2020. (Doc. No. 41-3). Neither the Executive Order nor the Ordinance directly supports Plaintiff's contention that the pandemic resulted in a slowdown and forced the closure of unidentified amenities. Plaintiff does not identify any particular hotel amenities affected by the pandemic although it references gatherings and food service elsewhere in its brief.

[3] Neither party argues for the application of the law of any other state.

3

*Max True,* 912 P.2d at 869 (internal citations omitted). "[I]n the event of ambiguity or conflict in the policy provisions, a policy of insurance is to be construed strictly against the insurer and in favor of the insured." *Spears v. Shelter Mut. Ins. Co.*, 73 P.3d 865, 868–869 (Okla. 2003). Under Oklahoma law, the insured has the burden of showing covered loss, while insurer has the burden of showing that a loss falls within an exclusionary clause. *See, e.g., Pittman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291 1298 (10th Cir. 2000).

In support of its contention that there is coverage under the Policy, Plaintiff relies on the following Policy provisions:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

The Policy, Doc. No. 41-1, p. 99.[4] "Covered Causes of Loss" means "direct physical loss" unless subject to limitations or exclusions. (Doc. No. 41-1, p. 124). The Policy does not define "direct physical loss" and Plaintiff contends that the COVID-19 pandemic, which precipitated the actions of state and local government officials, constituted a "direct physical loss" such that it is entitled to recover its actual loss of Business Income.

The crux of the parties' coverage dispute revolves around the term "direct physical loss" as set forth above. Plaintiff contends first that the term is ambiguous and therefore should be construed in its favor and second that the term is not ambiguous, and it is entitled

---

[4] "Suspension" is defined in the Policy to include "[t]he slowdown or cessation of your business activities." (Doc. No. 41-1, p. 107).

to business income coverage under the plain terms of the Policy. (Doc. No. 41, pp. 9-12). Unsurprisingly, Defendant argues that the term is not ambiguous and that by its plain terms, the Policy does not provide coverage.

In interpreting similar language in a Policy issued to Goodwill Industries of Central Oklahoma[5] this Court recently rejected similar arguments, finding that the phrase "direct physical loss" was not ambiguous and further rejected the insured's contention that the unambiguous term provided coverage in the absence of tangible damage to property:

> The Oklahoma Supreme Court has relied on dictionary definitions to provide the common usage of terms; *see, e.g.*, *U. S. Fid. & Guar. Co. v. Briscoe*, 239 P.2d 754, 757 (Okla. 1951), and Merriam-Webster defines "direct" as "proceeding from one point to another … without deviation or interruption" or as "stemming immediately from a source," implying that a causal connection must exist. Merriam Webster, https://www.merriam-webster.com/dictionary/direct (last visited Oct. 29, 2020). "Physical" is defined as "having material existence" or as "relating to material things," and a "loss" is defined as a "deprivation." Merriam Webster, https://www. Merriamwebster.com/dictionary/physical (last visited Oct. 29, 2020); Merriam Webster, https://www.merriam-webster.com/dictionary/loss (last visited Oct. 29, 2020). Thus, a direct physical loss results from an actual, or material, deprivation of Plaintiff's property. . . .

*Goodwill Indus. Of Cen. Okla., Inc. v. Phila. Indem. Ins. Co.*, No. CV-20-511-R, 2020 WL 8004271, at *3 (W.D. Okla. Nov. 9, 2020). The Court concluded that the policy language was not ambiguous and further that the insurer's interpretation was the only reasonable interpretation.

---

[5] Unlike Plaintiff in the instant case, the Goodwill stores were non-essential businesses and pursuant to the Governor's Order and a variety of local ordinances, were closed for a period of time during the pandemic.

Courts throughout the country are currently addressing similar issues regarding business losses, insurance coverage, and the COVID-19 pandemic. Recently, the Northern District of Alabama offered a useful explanation of the term "direct physical loss."

> The plain meaning of the phrase "direct physical loss or damage" comports with the findings of the New York and Georgia courts. "Loss" is defined as "ruin, destruction," *Loss*, Oxford English Dictionary (2021), available at www.oed.com ("Oxford English Dictionary"), and "damage" as "[i]njury, harm; *esp.* physical injury to a thing, such as impairs its value or usefulness." *Damage*, Oxford English Dictionary, *supra*. As Ascent correctly notes, the court must read these terms as having distinct meanings because otherwise one of the terms would be superfluous. *See Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 99 (2d Cir. 2012); *Harris Cnty. v. Penton*, 439 S.E.2d 729, 730 (Ga. Ct. App. 1993). The court therefore interprets "damage" to be a lesser harm than "loss," which results in total ruin. *See The Woolworth LLC v. The Cincinnati Ins. Co.*, 2021 WL 1424356, at *4 (N.D. Ala. Apr. 15, 2021). Although the terms vary in the degree of harm they describe, they share the same essential character. And within the context of this policy, both loss and damage to property must be "physical," which is defined as "of or relating to matter or the material world; natural; tangible, concrete." *Physical*, Oxford English Dictionary, *supra*.

*Ascent Hospitality Management Co., LLC v. Employers Insurance Company of Wausau*, 2021 WL 1791490, at *3 (N.D. Ala. May 5, 2021). This Court concurs with its prior determination in *Goodwill*, that the term "direct physical loss" is not ambiguous and further, that Defendant's proffered interpretation is the only reasonable one. To adopt Plaintiff's reading of the Policy would render the term "physical" without any meaning in the Policy. *See also Mt. Hawley v. Kusum Hospitality Management Inc.*, Case No. 20-811-J, Doc. No. 25 (W.D. Okla. April 18, 2021)(order dismissing insureds' counterclaim).

Similarly, the Southern District of Iowa rejected an insured restaurant's efforts to recover under its policy when the pandemic forced a shut-down to in-person dining.

> Nowhere does Plaintiff plead the *physical* loss of use of the property at its insured premises, just its *beneficial* or *intended* use; in fact, Plaintiff disclaims the Covid-19 virus was ever physically present at its premises at any time. Plaintiff's concession precludes a finding of "direct physical loss of or damage to property" at its restaurant to trigger Business Income coverage. *See Palmer Holdings & Invs., Inc. v. Integrity Ins. Co.*, No. 4:20-cv-154-JAJ, —— F.Supp.3d ——, ——, 2020 WL 7258857, at *10 (S.D. Iowa Dec. 7, 2020) ("Even if loss and damage are distinct, the physicality requirement of the loss or damage remains, and Plaintiffs have failed to allege a tangible loss or alteration to property that is sufficient to trigger coverage under the Business Income provision."); *accord Seifert*, 495 F.Supp.3d at 751 (observing Minnesota law "does not require a showing of structural damage to qualify for coverage" for "directly physical loss," but "[a]ctual physical contamination of the insured property is still required. Simply claiming 'mere loss of use or function' is not enough").

*Lisette Enterprises, Ltd. v. Regent Ins. Co.,* No. 4:20-cv-00200-SMR-CFB, 2021 WL 1804618, at *5 (S.D. Iowa May 6, 2021). Similarly, the Northern District of Illinois noted:

> The words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure.

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F.Supp.3d 690, 693 (N.D. Ill. Sept. 21, 2020), *reconsideration denied, Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2021 WL 83758 (N.D. Ill. Jan. 10, 2021). Similarly, the Eastern District of Pennsylvania opined:

> I find that "for Plaintiff[ ] to assert an economic loss resulting from their inability to operate their premises as intended within the coverage of the Policy's 'physical loss' provision, the loss and the bar to operation from which it results must bear a causal relationship to some *physical condition* of or on the premises and that the premises must be uninhabitable or unusable, or nearly as such."

*Hair Studio 1208 v. Hartford Underwriters Ins. Co.*, No. 20-2171, 2021 WL 1945712 (E.D. Pa. May 14, 2021)(quoting *Humans & Resources, LLC v. Firstline Nat'l Ins. Co.*, 2021 WL 75775, at *8 (E.D.Pa. Jan. 8, 2021)).

In support of its position, Plaintiff cites to the decisions by two state court judges from Oklahoma. *Cherokee Nation, et al. v. Lexington Ins. Co.*, Case No. CV-20-150 (Cherokee County); *Choctaw Nation of Oklahoma v. Lexington Ins. Co.*, Case No. CV-20-42 (Bryan County). Each of those decisions, attached to Plaintiff's Motion for Summary Judgment as Exhibits 4 and 5, considered the language of a Tribal Property Insurance Program ("TPIP") Policy. The courts concluded that the insurer's interpretation of "direct physical loss" was unreasonable and adopted the position of the insureds. In doing so, however, the courts distinguished this Court's decision in *Goodwill*.

> When the TPIT Policy is "read as a whole" as required by the Court, it is clear that neither *Goodwill* nor the other Insurance Services Office ("ISO") policy cases listed in Defendant Insurer's Notices of Supplemental Authority are applicable. . . . Simply put, the policy language is not the same. *See Goodwill Indus. of Cent. Oklahoma, Inc. v. Philadelphia Indem. Ins. Co.*, NO. CV-20-511-R at * 1 (W.D. Okla. Nov. 9, 2020).
> The policy at issue in *Goodwill* and the vast majority of cases relied upon by Defendant Insurers utilize standardized ISO form policy language. Hearing TR. 33: 3-17 (Oct. 27, 2020)(A. Vance); *see e.g. Goodwill Indus. of Cent. Oklahoma, Inc. v. Philadelphia Indem. Ins. Co.*, No. CV-20-511-R at * 1; *see also Colony Ins. Co. v. Jackson*, No. 09-CV-780-TCK-TLW, 2011 WL 2118728, at * 3 (N.D. Okla. May 27, 2011)("ISO is a national insurance policy drafting organization that develops standard policy forms and files them with each state's insurance regulators. *See French v. Assurance Co. of Am*, 448 F.3d 693, 697 & n. 1 (4th Cir. 2006)."). The TPIP Policy, however, does not utilize the same language, definitions, or provisions as the ISO form policies. First and foremost, the triggering language within the ISO Policies and the TPIP Policy is simply not the same. Courts cited by Defendant Insurers have assigned special meaning to "direct physical loss *of property*" in the ISO Policies. *E.g. Mudpie, Inc. v Travelers Cas. Ins. o. of Am*, No. 20-cv-03213-JST, 2020 WL 5525171, at *3-4 (N.D. Cal. Sept. 14, 2020) (finding "loss of" requires property to be permanently misplaced or unrecoverable); *see also Karen Trihn, DDS, Inc. v. State Farm Gen. Ins. Co.*, No. 5:20-CV-04265-BLF, 2020 WL 7696080, at *4 (N.D. Cal. Dec. 28, 2020) ("In other words, the term 'loss of' contemplates that the property is unrecoverable). But *"all risk of direct physical loss"*—the triggering

8

> language within the TPIP Policy—neither has "property" as the object of the clause nor includes "of" modifying the scope of the *loss*.

Doc. No. 41-4, p. 9; 41-5, pp. 9-10. The Court finds that because of these differences, the decisions in *Choctaw* and *Cherokee*, are not outcome determinative here.

Courts undertaking interpretation of "direct physical loss" have remained cognizant of the obligation to consider the whole of an insurance policy.

> For example, the policy covers loss of business income only during the Period of Restoration (Doc. 19-1 at 34), which begins at the time of the direct physical loss and ends when the property "should be repaired, rebuilt or replaced" or "when business is resumed at a new permanent location." Doc. 19-1 at 54–55. This definition leads to the conclusion that direct physical loss must be a loss requiring repair, rebuilding, or replacement.

*Dukes Clothing, LLC v. The Cincinnati Insurance Co.*, No. 7:20-cv-860-GMB, 2021 WL 1791488, at *3 (N.D. Ala. May 5, 2021).

The interpretation that this provision requires tangible damage is further reinforced by the rest of the Policy. The provision here hinges on payments being made during the "period of restoration," so it is instructive to see how the Policy defines that period.[6] Under the Policy, the restoration period begins "72 hours after the time of physical loss or damage" or "immediately after the time of direct physical loss or damage for Extra Expense Coverage" and ends either on (1) "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or (2) "[t]he date when business is resumed at a new permanent location." Doc. 41-1, p. 107. Here there are no allegations that the property required repair, rebuilding or replacement

---

[6] Govinda correctly argues that "period of restoration" is not a trigger to coverage;, however, it informs interpretation of the remainder of the Policy, including the provision mandating direct physical loss of or damage to property.

and Plaintiff did not resume business at a new permanent location. In short, the Court finds that considering the Policy as a whole, Plaintiff has not established that it is entitled to coverage for loss of business income related to the COVID-19 pandemic because it fails to establish a direct physical loss of or damage to property. As a result, Plaintiff is not entitled to summary judgment on this basis.

Plaintiff further argues against application of any exclusions identified by Defendant insurer, specifically the "Exclusion of Loss Due to Virus or Bacteria" and the "Loss of Market or Delay Exclusion." Although Plaintiff has not established the right to coverage, and therefore Defendant is not obligated to establish the applicability of one or more exclusions, the Court will nevertheless address the exclusions.

The virus exclusion provides, in pertinent part:

> We will not pay for any loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Doc. No. 41-1, p. 82). Plaintiff tries to avoid the virus exclusion by arguing, "[t]he claim made by Plaintiff was for losses due to the Pandemic and Executive Orders, not a virus, bacterium, or other microorganisms. In fact, Plaintiff has not alleged the presence of any virus, bacterium or other microorganism that has cause (sic) or could cause physical distress, illness, or disease." (Doc. No. 41, p. 23).

The Court disagrees with Plaintiff's position. But for the COVID-19 virus, which is capable of causing illness, there would not have been a pandemic. Without the pandemic Governor Stitt and the City of Midwest City would not have shuttered non-critical businesses and called for citizens to stay at home. Therefore, without the virus, Govinda

would not have been placed in the position of suffering the losses alleged in the Amended Complaint.

> Also, the Virus Exclusion need not explicitly refer to a pandemic to be applicable here. After all, the "distinction between a 'virus' and a 'pandemic' is not a distinction at all because 'the current pandemic is a widespread outbreak of disease caused by the COVID-19 virus.'" *Santo's Italian Café LLC v. Acuity Ins. Co.,* Civ. A. No. 20-1192, 2020 U.S. Dist. LEXIS 239382, at *44–45 (N.D. Ohio Dec. 21, 2020) (rejecting the plaintiff's argument "that the virus exclusion is ambiguous and does not address a pandemic"); *see also Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, Civ. A. Nos. 20-1949, 20-1869, 2020 U.S. Dist. LEXIS 238254, at *18–19 (E.D. Pa. Dec. 17, 2020) (citations omitted) ("The lack of a specific reference to a pandemic in the policy does not render the provision ambiguous. In any event, there is no real distinction between 'virus' and 'coronavirus pandemic.' "); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*, Civ. A. No. 20-4434, 2020 U.S. Dist. LEXIS 174010, at *6–7 (N.D. Cal. Sept. 22, 2020) (internal quotations omitted) (rejecting the plaintiff's argument that had the defendant "intended to exclude risks associated with a pandemic, the [p]olicy could have referred explicitly to these risks or included a specific exclusion targeted at pandemics," because "[n]othing in the [v]irus [e]xclusion indicate[d] it [wa]s limited to viruses arising from the insured premises rather than a pandemic").

*Beach Glo Tanning Studio Inc., v. Scottsdale Insurance Company*, 2021 WL 2206077, at *7 (D.N.J. May 28, 2021); *see also Ballis Nails & Spa, LLC v. Traveler Casualty Ins. Co.*, --- F.Supp.3d ---, 2021 WL 37984, *6 (E.D. Mo. January. 5, 2021).[7] As noted by the court in *Causeway Automotive, LLC v. Zurich American Ins. Co.*, 2021 WL 486917, * 5 (D.N.J. Feb. 10, 2021), "[t]he provision in no way suggests that the virus must be present at the insured property for the exclusion to apply."

---

[7] The Court disagrees with the conclusion of the District Court of Cherokee County that "a pandemic is a loss distinct from a virus." (Doc. No. 41-5, p. 11).

For the reasons set forth above, the Court finds no genuine issue of material fact remain with regard to Plaintiff's claim for declaratory relief on the Policy, and Defendant is entitled to summary judgment in its favor.

**Defendant's Motion for Summary Judgment**

Defendant also filed a motion for summary judgment, asserting that Plaintiff has not established that it suffered a direct physical loss and that Plaintiff cannot rely on the civil authority provision to establish coverage. For the reasons set forth above, Defendant is entitled to summary judgment on Plaintiff's contention that it suffered a direct physical loss and therefore is entitled to coverage for lost business income. Additionally, as set forth above, Defendant has established that the virus exclusion applies. These conclusions, however, do not address the entirety of Defendant's motion, which also addresses Plaintiff's allegation that it is entitled to recoup lost business income under the "Civil Authority" provision and Defendant's contention that the "loss of market" exclusion applies.

Defendant's motion contains numerous extraneous facts not relevant to the outcome herein, largely related to insurance policies issued by various insurers to Plaintiff Govinda in years prior to 2020. Relevant to the outcome of Defendant's motion, however, are admissions by Govinda that it was not required to close the Hampton Inn Midwest City in response to the COVID-19 pandemic nor was access precluded by any Executive Order or Ordinance.[8]

---

[8] In its Motion for Summary Judgment Defendant asserted as Undisputed Material Fact 46, "Govinda did not lose access to the subject hotel as a result of any federal, state, or local government order." (Doc. No. 40, p. 17) In support thereof Defendant cited to Plaintiff's responses to certain Requests for Admission, wherein Plaintiff admitted that Mr.

For the reasons set forth above, the Court finds no genuine issue of material fact remain with regard to Plaintiff's claim for declaratory relief on the Policy, and Defendant is entitled to summary judgment in its favor.

**Defendant's Motion for Summary Judgment**

Defendant also filed a motion for summary judgment, asserting that Plaintiff has not established that it suffered a direct physical loss and that Plaintiff cannot rely on the civil authority provision to establish coverage. For the reasons set forth above, Defendant is entitled to summary judgment on Plaintiff's contention that it suffered a direct physical loss and therefore is entitled to coverage for lost business income. Additionally, as set forth above, Defendant has established that the virus exclusion applies. These conclusions, however, do not address the entirety of Defendant's motion, which also addresses Plaintiff's allegation that it is entitled to recoup lost business income under the "Civil Authority" provision and Defendant's contention that the "loss of market" exclusion applies.

Defendant's motion contains numerous extraneous facts not relevant to the outcome herein, largely related to insurance policies issued by various insurers to Plaintiff Govinda in years prior to 2020. Relevant to the outcome of Defendant's motion, however, are admissions by Govinda that it was not required to close the Hampton Inn Midwest City in response to the COVID-19 pandemic nor was access precluded by any Executive Order or Ordinance.[8]

---

[8] In its Motion for Summary Judgment Defendant asserted as Undisputed Material Fact 46, "Govinda did not lose access to the subject hotel as a result of any federal, state, or local government order." (Doc. No. 40, p. 17) In support thereof Defendant cited to Plaintiff's responses to certain Requests for Admission, wherein Plaintiff admitted that Mr.

The Civil Authority section of the "Business Income (And Extra Expense) Coverage" portion of the Policy.

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Doc. No. 41-1, p. 100.[9] Here Govinda does not identify or provide evidence that "property other than property at the described premises" was damaged. Furthermore, there is no evidence that access to the insured property was prohibited by civil authority in an effort to repair the damage. Plaintiff contends it experienced a slowdown but concedes that the owner/operator was not prevented from accessing Plaintiff's property as the result of a governmental mandate. *See e.g. Hair Studio 1208, LLC*, 2021 WL 1945712 at *10 (dismissing claim for civil authority coverage and collecting cases).

The case *South Texas Medical Clinics . . .* is illustrative. *S Texas Med.*

---

Patel, as owner/operator, admitted he was not precluded from accessing the hotel property. (Doc. No. 40-3, p. 7). In response, Plaintiff denies Undisputed Fact No. 46, however, its response does not address the disputed fact. Rather, Plaintiff states, "Denied. The COVID-19 pandemic and resulting Executive Orders caused direct physical loss of or damage to property sufficient to trigger business interruption coverage under the Policy." Doc. 45, p. 10. This response neither comports with the requirements of Rule 56 nor establishes a disputed issue of fact.

[9] "In short, the provision requires that (1) there be property damages within a mile of the commercial premises, and (2) the civil actor implemented a measure to repair that damage or to gain access to the damaged property." *Selery Fulfillment, Inc. v. Colony Ins. Co.*, 4:20-cv-853, 2021 WL 963742, * 8 (E.D. Texas Mar. 15, 2021) (citing *Hajer v. Ohio Sec. Ins. Co.*, 2020 WL 7211636, *3 (E.D. Tex. Dec. 7, 2020)).

> *Clinics, P.A.,* 2008 WL 450012, at *1. In *South Texas Medical Clinics,* the insured filed a claim for business losses sustained while a local evacuation order was put into effect in response to Hurricane Rita. *Id.* Although the insured's clinics never suffered any physical damage, the insured thought a similarly-worded civil authority provision covered its cause of action. *Id.* at *1-2. However, the court held that the provision did not cover the insured's losses because the evacuation order was "based on the anticipated threat of damage" in the area and not on any actual damage therein. *Id.* at *10.

*Selery Fulfillment, Inc.*, 2021 WL 963742 at *8. Again, there was no physical loss and Plaintiff has not presented evidence that would permit a finding in its favor, nor has it established the existence of any disputed factual issues.

Although Plaintiff has not established that it suffered a covered loss, and the Court concluded above that Defendant had established the applicability of the virus exclusion[10], the Court nevertheless finds it appropriate to consider Defendant's other proffered exclusion, "loss of market." The Policy provides, "[w]e will not pay for loss or damage caused by or resulting from . . . [d]elay, loss of use or loss of market." Doc. No. 41-1, p. 126. Although Plaintiff argues to the contrary, the Court finds no evidentiary or legal basis for concluding that the exclusion would not apply.

Although for purposes of its motion for summary judgment Defendant conceded that Plaintiff experienced a slowdown in hotel business, this slowdown was not the result of any demand or legal requirement that the hotel shutter its doors. Rather, as a result the pandemic travel slowed and the market for hotel rooms was reduced. Plaintiff contends such an interpretation would void the business income coverage -- because to exclude loss

---

[10] Defendant is entitled to summary judgment on this basis as set forth above in addressing Plaintiff's motion for summary judgment.

14

of use or loss of market would negate the business income coverage provided. However, the business income coverage requires a direct physical loss of the property or damage to the property. Thus, the loss of market not accompanied by direct physical loss, as is the case here, is excluded from coverage under the Policy. Accordingly, beyond Plaintiff's failure to establish that coverage is available for its business losses under the Policy, Defendant has established that one or more exclusions apply. Therefore, summary judgment is appropriate in Defendant's favor.

For the reasons set forth herein, Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's Motion for Summary Judgment is DENIED. Judgment shall be entered accordingly. Furthermore, Plaintiff's Motion to Stay (Doc. No. 50) is denied for the reasons set forth herein.

**IT IS SO ORDERED** this 28th day of June 2021.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE